943 A.2d 1173

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Karin Marie KENDRICK.

Misc. Docket AG No. 35, Sept. Term, 2006.

Court of Appeals of Maryland.

March 11, 2008.

James P. Botluk, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Commission), for Petitioner.

Karin Marie Kendrick, Baltimore, for Respondent.

Argued Before BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER, (Retired, Specially Assigned), DALE R. CATHELL, (Retired, Specially Assigned), JJ.

GREENE, Judge.

The Attorney Grievance Commission of Maryland, acting through Bar Counsel and pursuant to Maryland Rule 16–751(a),[1] filed a Petition For Disciplinary or Remedial Action against Respondent Karin Marie Kendrick on August 30, 2006. The Petition alleged that Respondent, who was admitted to the Bar of this Court on December 13, 1994, violated Rules 1.1 (Competence),[2] 1.3 (Diligence),[3] 1.5 (Fees),[4] 1.15 (Safekeeping

---

1. Maryland Rule 16–751(a) provides in pertinent part:

    (a) **Commencement of disciplinary or remedial action.** (1) Upon approval of [the Attorney Grievance] Commission. Upon approval or direction of the [the Attorney Grievance] Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

2. MRPC 1.1 provides:

    A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

3. MRPC 1.3 provides:

    A lawyer shall act with reasonable diligence and promptness in representing a client.

4. MRPC 1.5(a) provides:

Property),[5] and 8.4 (Misconduct)[6] of the Maryland Rules of

A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

5.  MRPC 1.15 provides in relevant part:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

\* \* \*

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(e) When in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute.

6.  MRPC 8.4, in relevant part, provides:

It is professional misconduct for a lawyer to:

\* \* \*

Professional Conduct ("MRPC") in her representation as Co-Personal Representative of the Estate of Judith Nina Kerr, deceased ("Estate"). Pursuant to Maryland Rules 16–752(a) [7] and 16–757(c),[8] we referred the matter to the Honorable Timothy J. Doory of the Circuit Court for Baltimore City to conduct an evidentiary hearing and to submit to this Court proposed findings of fact and conclusions of law. Judge Doory held a hearing on the Petition on August 6, 2007, and August 13, 2007. On September 6, 2007, Judge Doory issued findings of fact and conclusions of law, in which he found that Respondent violated Rules 1.1, 1.3, 1.5(a), 1.15(a), 1.15(d), and 1.15(e). Judge Doory's findings of fact and conclusions of law read in pertinent part:

## FINDINGS OF FACT

Pursuant to Maryland Rule 16–757(c), this court finds that the following facts have been proven by clear and convincing evidence.

1. On March 4, 1999, Respondent, a close personal friend of deceased, and Oliver Kerr, the brother of the deceased, were appointed co-Personal Representatives of the Estate

---

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice[.]

7. Maryland Rule 16–752(a) states:

(a) **Order.** Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing.

8. Maryland Rule 16–757(c) states in pertinent part:

(c) **Findings and conclusions.** The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law.

of Judith Nina Kerr, deceased. *See Petitioner's Exhibit # 1 p. 5.*

2. On March 22, 1999, Oliver Kerr paid $3,000.00 from estate funds to the Law Offices of Dwight Pettit, with whom Respondent was an associate at the time. *See Petitioner's Exhibit # 2.*

3. On May 24,1999, Mr. Kerr paid $3,000.00 to Respondent from estate funds. *See Petitioner's Exhibit # 2.*

4. Respondent has failed to file a Petition with the Orphans' Court for Baltimore County to authorize the payment of these fees. *See Petitioner's Exhibit # 1 Printout of Estate Entries.*

5. Respondent has defended her collection of the $6,000.00 in attorneys fees from Estate funds time and time again; she asserts that the two checks were written, signed, and thus ratified by Mr. Kerr, Co–Personal Representative and sole heir to the Estate, and that $3,000.00 of the payments were in appreciation of her efforts to reduce a MBNA credit card balance from $17,540.47 to $13,155.31. *See Petitioner's Exhibit # 1 p. 127.*

6. On August 28, 2002, the Orphans' Court for Baltimore County ordered the removal of Respondent and Mr. Kerr as co-Personal Representatives, finding them to be unable or incapable with or without their own fault to discharge their duties and powers effectively. The Orphans' Court further ordered Respondent and Mr. Kerr to file their Third and Final Administration Account within 30 days of that Order and ordered them to turn over all Estate assets to the successor Personal Representative. The Orphans' Court further ordered the appointment of Roland M. Schrebler, Esquire as Successor Personal Representative. *See Petitioner's Exhibit # 1 p. 58.*

7. On October 15, 2002, the Orphans' Court reissued its demand that Respondent and Mr. Kerr file their Third and Final Administration Account within 30 days of that Order as well as turn over all assets of the Estate and all financial

records in their possession to the Successor Personal Representative Mr. Schrebler. *See Petitioner's Exhibit # 1 p. 66.*

8. Respondent, rather than complying with the Orphans' Court Orders of August 28, 2002 and October 15, 2002, filed a Motion to Reconsider the Appointment of a Successor Personal Representative *(See Petitioner's Exhibit # 1 p. 67)*, which was denied on November 18, 2002 (See Petitioner's Exhibit # 1 p. 69), and an Appeal to the Circuit Court for Baltimore County *(See Petitioner's Exhibit # 1 p. 70)*, in which the Honorable Dana M. Levitz ruled against the Respondent and in favor of Mr. Schrebler. *See Petitioner's Exhibit # 1 p. 79.*

9. Respondent, again rather than complying with the previous Court Orders, filed an Appeal of the Circuit Court for Baltimore County's decision to the Court of Special Appeals of Maryland, in which the Court of Special Appeals on July 27, 2004 reaffirmed the Circuit Court's decision. *See Petitioner's Exhibit # 1 p. 82.*

10. Respondent immediately filed a Motion for Reconsideration in the Court of Special Appeals of Maryland[ ]on September 1, 2004 which was denied. *See Petitioner's Exhibit # 1 p. 83.*

11. Respondent then filed a Petition for Writ of Certiorari with the Court of Appeals of Maryland on October 27, 2004 appealing the decision of the Court of Special Appeals which was denied on December 23, 2004. *See Petitioner's Exhibit # 1 p. 86.*

12. On February 11, 2005, Mr. Schrebler filed a Petition to Hold Former Personal Representatives in Civil Contempt and request for A Hearing. *See Petitioner's Exhibit # 1 p. 86.*

13. On June 2, 2005 after the hearing on the Petition to Hold Former Personal Representative in Civil Contempt, the Orphans' Court found that there is a cash balance of $6,616.26 in the Account of the Estate which has not been turned over to the Successor Personal Representative, that there is an Account retention amount of $2,755.58 which

funds have not been accounted for and have not been turned over to the Successor Personal Representative, and that the Respondent was in possession of a Carefirst BCBS of Maryland check payable to the Estate of Judith Nina Kerr in the amount of $196.80 which the Respondent was then unable to locate and had failed to turn over to the Successor Personal Representative. *See Petitioner's Exhibit # 1 p. 102.*

14. The Orphans' Court on June 2, 2005 Ordered Mr. Kerr and the Respondent to be held in civil contempt of Court, that Respondent shall reimburse the Estate $6,000.00 in legal fees that were found to be disbursed from Estate assets without Court authority and send the reimbursement to Mr. Schrebler, and that Mr. Kerr and Respondent shall make payment to the Successor Personal Representative the balance of the value of the estate assets unaccounted for consisting of the $6,616.26 cash balance reflected in Respondent's Third and Final Administration Account, the $2,755.58 retention amount reflected on the Account, and the $196.80 representing the Carefirst BCBS check made payable to the Estate. *See Petitioner's Exhibit # 1 p. 102.*

15. On July 5, 2005, Respondent filed an Appeal in the Circuit Court for Baltimore County of the Order of the Orphans' Court dated June 2, 2005; on November 29, 2005, the Circuit Court found Respondent to be held in civil contempt, ordering her to turn over all Estate assets to Mr. Schrebler, and to file an affidavit indicating that there are no other assets or reports to turn over to the Successor Personal Representative and/or that all reports and assets have been turned over to the Successor Personal Representative. *See Petitioner's Exhibit # 1 p. 111.*

16. On May 2, 2006, the Circuit Court for Baltimore County ordered that Respondent shall file her Revised Third and Final Administration Account with the Orphans' Court. *See Petitioner's Exhibit # 1 p. 120.*

17. On May 16, 2006, Respondent attempted to file her Revised Third and Final Administration Account with the Orphans' Court, but it was intercepted and held by the

Court Auditor[,] Mr. Tony Butta because it was not sufficient for submission to the Court. *See Petitioner's Exhibit # 1 p. 115.*

18. That according to Mr. Butta, the Court Auditor, an Account is not deemed to be properly filed until it is approved by the Orphans' Court. *See Petitioner's Exhibit # 1 p. 123.*

19. On September 11, 2006, a Show Cause Order was signed by the Circuit Court for Baltimore County ordering Respondent to show cause why she should not be held in civil contempt of court for allegedly disobeying the May 2, 2006 Order. *See Petitioner's Exhibit # 1 p. 123.*

20. On November 8, 2006, Respondent filed a Second Revised and Not Final Administration Account and a Petition for Allowance of Commissions and Counsel Fees *(See Petitioner's Exhibit # 1 p. 125);* on November [ ] 29, 2006, the Orphans' Court denied the Respondent's Petition and denied the submission of the Second Revised and Not Final Administration Account. *See Petitioner's Exhibit # 1 p. 137.*

21. On January 3, 2007, Respondent filed a Motion to Alter or Amend Judgment *(See Petitioner's Exhibit # 1 p. 135);* said Motion was denied on January 18, 2007 by the Orphans' Court. *See Petitioner's Exhibit # 1 p. 137.*

22. On February 21, 2007, Respondent filed an Appeal with the Circuit Court for Baltimore County of the January 18, 2007 Order of the Orphans' Court. *(See Petitioner's Exhibit # 1 p. 138);* on February 27, 2007, the Clerk of the Orphans' Court sent a letter to Respondent advising her that she must send a check for $129.00 before the Appeal is transmitted to the Circuit Court. *See Petitioner's Exhibit # 1 p. 140.* There is no further indication in evidence of the Appeal.

23. Because of the Respondent's failure to file a Third and Final Administration Account, the Estate of Judith Nina Kerr remains open and the matter cannot move forward

until Respondent files a Final Accounting that is approved by the Orphans' Court.

24. This [c]ourt finds that the Respondent was close to the family of Judith Nina Kerr, deceased, and finds that the Respondent believes that her actions as Co–Personal Representative were beneficial to the Estate, despite subsequent Court Orders and findings against her.

## CONCLUSIONS OF LAW

This court makes the following conclusions of law based upon the facts adduced in this matter.

### *Rule 1.5   (Fees)*

The Respondent violated Rule 1.5 when she accepted $6,000.00 in attorneys fees on behalf of the Estate. Rule 1.5 of the Maryland Rules of Professional Conduct states that an attorney "shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses." The Rule further states that "the factors to be considered in determining the reasonableness of a fee include the following: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; . . . and (3) the fee customarily charged in the locality for similar legal services." The amount of attorney's fees collected by the Respondent in this matter far exceeds the fee customarily charged for estates of similar size. According to the Petitioner's witness, Mr. Schrebler, Maryland Probate Law only allows for attorneys fees for an estate of this size at a maximum of $3,522.00. The collection of $6,000.00 in fees is far beyond the fee amount allowed by State law.

The Respondent's defense of her collection of $3,000.00 of the $6,000.00 in attorney's fees as appreciation for her efforts in reducing an MSBA credit card balance from $17,540.47 to $13,155.31 does not sway this [c]ourt in its determination that the attorney's fees collected by the Respondent are unreasonable. A fee of $3,000.00 for reducing

a credit card balance by $4,385.16 hardly seems reasonable in light of the time and labor the Respondent must have spent in reducing the balance, which could not have been more than a couple of hours on the phone with a credit card company representative. Her assertion that Mr. Kerr wished for her to be paid the $6,000.00 in attorney's fees is not a valid argument either and cannot negate the fact that the fees are far above the maximum amount of attorney's fees allowed by law for an Estate the size of this present matter's Estate.

Upon review of the evidence and assessing the credibility of the Respondent, this [c]ourt is not convinced that the Petitioner's actions are motivated by avarice; rather the [c]ourt believes that the Respondent is motivated by a genuine belief that she is entitled to the fees involved and remains stubbornly resistant to any suggestions that she is not entitled to them. She clings to her misguided belief against all advice.

For these reasons, the court finds that the Respondent violated Rule 1.5 when she collected $6,000.00 in attorneys fees on behalf of the Estate.

### Rule 1.1   (Competence)

The Respondent violated Rule 1.1 when she repeatedly failed to file her Third and Final Administration Account and ultimately caused the Estate to remain open and unable to be closed due to her failure to file an Account that is approved by the Orphans' Court.

The Respondent admitted that she had very little experience in probating an Estate, but inexperience does not necessarily amount to a violation of this Rule. The comment for Rule 1.1 in the 2006 edition of the Maryland Rules of Professional Conduct explains that "[2] A lawyer need not necessarily have special training or prior experience to handle legal problems of a type with which the lawyer is unfamiliar. A newly admitted lawyer can be as competent as a practicioner [sic] with long experience. A lawyer can

provide adequate representation in a wholly novel field through necessary study."

This Court finds that the Respondent began to probate this Estate with very little experience and direction, and despite the eight years of problems that she has been experiencing with several courts in administering this Estate, the Respondent refuses to admit to her ignorance of the probate procedures involved or to seek and accept help from qualified legal professionals in getting her problems resolved.

Her stubbornness over the past eight years to find the guidance necessary to close the Estate amounts to incompetence, and therefore, this court finds that the Respondent violated Rule 1.1

### Rule 1.3 (Diligence)

The Respondent violated Rule 1.3 when she repeatedly failed to file a Third and Final Administration Account approved by the Orphans' Court and to turn over all assets of the Estate and all financial records in her possession to the Successor Personal Representative, Mr. Schrebler, thus preventing Mr. Schrebler from performing his duties and closing the Estate.

The comment to Rule 1.3 in the 2006 edition of the Maryland Rules of Professional Conduct explains that the "lawyer must act with the commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf." The comment further reads that "(a) client's interests often can be adversely affected by the passage of time or the change of conditions."

This Court is satisfied that the Respondent acted for her own benefit rather than for the benefit of her client; the Respondent choose to file motion upon motion to vacate the Orphans' Court's decision to remove her as Co–Personal Representative of the Estate and appeal upon appeal of the Circuit Court's upholding the Orphans' Court's decision, rather than file an approved Third and Final Administration

Account. In fact, this [c]ourt received a copy of an Order of the Orphans' Court for Baltimore County denying yet another Motion to Revise Alter or Amend Judgment filed by Respondent a week after this Court concluded its hearing on this matter, demonstrating the Respondent's stubborn pursuit to be proven "right" rather than her pursuit of the best interest of the Estate. *See Respondent Exhibit # 14 and Respondent's Exhibit # 15.* Simply the fact that the Estate remains open after eight years demonstrates the Respondent's lack of diligence. Therefore, this Court finds that the Respondent violated Rule 1.3.

*Rule 1.15  (Safekeeping Property)*

The Respondent violated Rule 1.15 when she failed to turn over all assets of the Estate and all financial records in [her and the Co–Personal Representative's] possession to the Successor Personal Representative, when she admittedly failed to locate a Carefirst BCBS of Maryland check payable to the Estate of Judith Nina Kerr in the amount of $196.80, and when she failed to file a Third and Final Administration Account approved by the Orphans' Court.

Rule 1.15(a) requires an attorney to keep complete records of account funds and other property the attorney has in her possession. On June 2, 2005, the Orphans' Court found that there is an Account retention amount of $2,755.58 which funds have not been accounted for and have not been turned over to the Successor Personal Representative, in violation of Rule 1.15(a).

Rule 1.15(d) requires an attorney to promptly deliver to a client or third party any funds or other property the client or third party is entitled to receive, and upon request by the client or third party, shall promptly render a full accounting regarding such property. The Respondent has failed to turn over all Estate assets to the Successor Personal Representative as of the date of this Court's hearing and has failed to file an Accounting that is accurate enough to be accepted by the Orphans' Court, in violation of Rule 1.15(d).

Rule 1.15(e) requires an attorney, when in the course of representation a lawyer is in possession of property in which two or more persons claim interests, to promptly distribute all portions of the property as to which the interests are not in dispute. In this case, the $6,000.00 in attorney's fees is in dispute; the Respondent believes that the fees are justifiable. However, the retention amount of $2,755.58 is not in dispute. The Respondent has failed to turn over both disputed and non-disputed property to the Successor Personal Representative, in violation of Rule 1.15(e).

### *Rule 8.4 (Misconduct)*

The Petitioner alleged that the Respondent violated Rule 8.4(b), Rule 8.4(c), and Rule 8.4(d). Under Rule 8.4, it is professional misconduct for a lawyer to:

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice.

This [c]ourt finds that the Respondent is not in violation of Rule 8.4(b) as the allegation that the Respondent committed a criminal act has not been proven by the Petitioner.

This [c]ourt is not satisfied that the Respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation. The [c]ourt believes that the Respondent's conduct during the past eight years in this matter is motivated by stubbornness, not greed, and therefore finds that the Respondent is not in violation of Rule 8.4(c).

As to Rule 8.4(d), the [c]ourt believes that it would only be cumulative to the other findings to also find that the Respondent is in violation of Rule 8.4(d).

### STANDARD OF REVIEW

"In proceedings involving attorney discipline, this Court has original and complete jurisdiction and conducts an independent review of the record." *Attorney Grievance Comm'n v. Cherry–Mahoi,* 388 Md. 124, 152, 879 A.2d 58, 76 (2005). "In our review of the record, the hearing judge's findings of fact generally will be accepted unless they are clearly erroneous." *Attorney Grievance Comm'n v. Harris,* 403 Md. 142, 155–56, 939 A.2d 732, 740 (2008). *See also* Maryland Rule 16–759(b)(2).[9] As we noted in *Attorney Grievance Comm'n v. Mahone,* 398 Md. 257, 266, 920 A.2d 458, 463 (2007):

> As to the scope of our review, we take into consideration whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757(b). This Rule provides that Bar counsel has the burden of proving the averments of the petition by clear and convincing evidence, and the attorney who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter of mitigation or extenuation by a preponderance of the evidence. Weighing the credibility of witnesses and resolving any conflict in the evidence are tasks proper for the fact finder.

(Internal citations and quotations omitted). "As to the hearing judge's conclusions of law, such as whether the provisions of the MRPC were violated, our consideration is essentially *de*

---

**9.** Maryland Rule 16–759(b)(2) provides:

(B) **Review by Court of Appeals.**

\* \* \*

(2) Findings of Fact. (A) If no exceptions are filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any.

(B) If exceptions are filed. If exceptions are filed, the Court of Appeals shall determine whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757(b). The Court may confine its review to the findings of fact challenged by the exceptions. The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses.

*novo."* *Harris*, 403 Md. at 156, 939 A.2d at 740; *see also* Maryland Rule 16–759(b)(1).

## DISCUSSION

In this case, the hearing judge concluded that Respondent violated Rules 1.1, 1.3, 1.5 and 1.15, but did not violate Rule 8.4. Respondent filed written exceptions to several of the hearing judge's findings of fact and conclusions of law.[10] Bar Counsel filed no exceptions.

### Respondent's Exception To Hearing Judge's Conclusions Concerning Rule 1.5

Respondent first excepts to the hearing judge's conclusion that she violated Rule 1.5 by collecting an attorney's fee of $6,000.00 for her work on the Estate, a sum the hearing judge found far exceeded the amount permitted by Maryland probate law. Respondent counters, stating that "the fees incurred by Respondent ... as attorney and co-personal representative were received for actions taken by Respondent ... in good faith and with just cause[,] protected and benefitted the estate and meets the requirements" of the Maryland Estates and Trust Article. *See* §§ 7–602, 7–603, 7–401(a)(1) and 7–401(y). Specifically, Respondent states that her negotiations with creditors of the Estate "saved the estate over fifteen thousand dollars;" therefore, "the compensation that she received is not out of line with her successful negotiations." Respondent notes that she negotiated with MNBA to reduce the decedent's credit card balance from $17,540.47 to $13,155.31. Respondent also points out that she negotiated

---

**10.** Pursuant to Md. Rule 16–758, either party may file post-hearing written exceptions to the findings and conclusions of the hearing judge. If no exceptions are filed by either party, we "may treat the findings of fact as established for the purposes of determining appropriate sanctions, if any." Maryland Rule 16–759(b)(2)(A). If exceptions are filed, however, Maryland Rule 16–759(b)(2)(B) provides that this Court "shall determine whether the findings of fact have been proven by [clear and convincing evidence,] the requisite standard of proof set out in Rule 16–757(b)." In addition, this Rule permits us to "confine our review to the findings of fact challenged by the exceptions." *Id.*

the Termination of Lease obligation down from $11,400.00 to $1,980.00. Last, Respondent contends that "Bar Counsel and the [hearing judge] ignored the fact that the ultimate distribute[e] and sole heir of the estate, the decedent's brother, and former co-personal representative, Oliver Kerr, made these checks out to the Respondent."

MRPC 1.5(a) states that "[a] lawyer shall not make an agreement for, charge for, or collect an unreasonable fee or an unreasonable amount for expenses." The Rule further lays out the "factors to be considered in determining the reasonableness of a fee." MRPC 1.5(a). They include:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

MRPC 1.5(a).

The Maryland Estates and Trust Article permits reasonable compensation to be paid to personal representatives and attorneys for their services in administering an estate. *See* Md. Code (1974, 2001 Repl.Vol.), §§ 7–601 & 7–602 of the Estates and Trust Article. An attorney serving as an estate's personal representative is entitled to receive reasonable compensation for his or her services in the form of either a commission or an attorney's fee or both. If the attorney/personal repre-

sentative seeks both a commission and attorney's fees, the court is charged with considering both requests together. *See* § 7–602(c).

Sections 7–601 and 7–602 set forth a framework for the reasonable allowance of compensation for the personal representative(s) and/or attorney(s) of an estate. Section 7–601, which is entitled "Compensation of personal representative and special administrator," reads in pertinent part:

(a) A personal representative or special administrator is entitled to reasonable compensation for services. If a will provides a stated compensation for the personal representative, additional compensation shall be allowed if the provision is insufficient in the judgment of the court. The personal representative or special administrator may renounce at any time all or a part of the right to compensation.

(b) Unless the will provides a larger measure of compensation, upon petition filed in reasonable detail by the personal representative or special administrator the court may allow the commissions it considers appropriate. The commissions may not exceed those computed in accordance with the table in this subsection.

| If the property subject to administration is: | The commission may not exceed: |
| --- | --- |
| Not over $20,000 | 9% |
| Over $20,000 | $1,800 plus 3.6% of the excess over $20,000 |

Section 7–602, which prescribes "compensation for services of an attorney," reads in pertinent part:

(a) An attorney is entitled to reasonable compensation for legal services rendered by him to the estate and/or the personal representative.

(b) Upon the filing of a petition in reasonable detail by the personal representative or the attorney, the court may allow a counsel fee to an attorney employed by the personal representative for legal services. The compensation shall be fair and reasonable in the light of all the circumstances to be considered in fixing the fee of an attorney.

Nevertheless, the attorney/personal representative may not accept or take funds from the estate without complying with the procedural guidelines set forth in § 7–502 and § 7–604. Section 7–502(a) requires the personal representative to "give written notice to each creditor who has filed a claim" against the estate and to any other interested party of any proposed payment to the personal representative or attorney. *See also* § 7–602(b) (requiring the personal representative or attorney to file a petition with the court when seeking attorney's fees). "The notice shall state the amount requested, and set forth in reasonable detail the basis for the request." § 7–502(a). Creditors and/or interested parties are then given twenty days in which to request a hearing on the payment. *Id.* The court may then approve the payment(s). The proposed payment(s), however, may be made without court approval if:

(1) Each creditor, who has filed a claim that is still open, and all interested parties consent in writing to the payment;

(2) The combined sum of the payments of commissions and attorney's fees does not exceed the amounts provided in § 7–601 of this subtitle; and

(3) The signed written consent form states the amounts of the payments and is filed with the register of wills.

§ 7–604(a). Section 7–604(b) requires, however, that the personal representative designate any such payment(s) made to the personal representative and/or the attorney as an expense.

■ In the case sub *judice*, it is clear from the record that Respondent accepted, prior to any court approval, $6,000.00 from the Estate for her services. On March 22, 1999, Co–Personal Representative Oliver Kerr issued check number 104, in the amount of $3,000.00, to the Law Offices of Dwight Petitt, with whom Respondent was an associate at the time of the check's issuance. On May 24, 1999, Mr. Kerr issued a second check, number 114, in the amount of $3,000.00; this time the check was issued directly to the Respondent. We hold that the acceptance of these payments by Respondent without court approval and without compliance with the requirements set forth in § 7–604, violated Rule 1.5. The record is devoid

of any compliance by Respondent and/or Mr. Kerr with the relevant statutory provisions governing the allowance of payments from an estate to the personal representative(s) and/or attorney(s). We explain.

There is no evidence in the record that either Respondent and/or Mr. Kerr sought court approval for the payment of the attorney's fees/commission, prior to the actual payment to Respondent. Indeed, there is no evidence in the record that Respondent and/or Mr. Kerr ever provided written notice to creditors of the Estate of their intention to pay Respondent $6,000.00 for her work on the Estate, as required under § 7–502. In addition, if these payments were intended to compensate Respondent for legal services she performed, neither Respondent nor Mr. Kerr filed the required petition with the Orphans' Court requesting approval of the fees. *See* § 7–602(b).

Respondent contends that her acceptance of these fees is permitted because Mr. Kerr, the Estate's Co–Personal Representative and "the ultimate distributee," approved the payments. Respondent's statement of Maryland's probate law is incorrect. As explained above, if the personal representative chooses not to seek the Orphans' Court's approval of a payment for services rendered to the estate, the personal representative must seek the consent of every creditor who still has a claim open with the estate and every interested party of that estate. *See* § 7–604(a)(1). Each qualifying creditor and interested party must then consent to the payment in writing, and these consents must be filed with the register of wills. § 7–604(a)(3).[11] There is no evidence that Respondent and/or Mr. Kerr sought to comply with this alternative method of approval for these payments. There is nothing in the record to suggest that Respondent and/or Mr. Kerr requested the consent of the creditors of the Estate for these payments, received the written consent of any of the Estate's creditors, or

---

**11.** In addition, the payment(s) must not exceed the commission schedule provided in § 7–601. § 7–604(a)(2).

filed the consent forms with the Register of Wills.[12]   Indeed, at the time of the two payments to Respondent, it is unclear if Respondent and/or Mr. Kerr knew the identities of persons or entities with claims against the Estate.[13]   It is clear, however, that after March 3, 1999, several creditors filed notice of their claims against the Estate, including First National Bank of Maryland, Nordstrom, Chadwick's, MBNA America, Baltimore Gas & Electric Company, and Allfirst Bank.

Furthermore, even if Respondent had sought the consent of the creditors, the amount of money accepted by Respondent exceeds the permissible amount set forth in the § 7–601(b) compensation schedule, thereby necessitating court approval.   Pursuant to § 7–604(a)(2), the personal representative of the estate may pay commissions or attorney fees without prior court approval, if, among other things, the amount sought does not exceed the amount allowed pursuant to the compensation schedule contained in § 7–601(b).   At the time of the "Petition for Probate," filed on March 4, 1999, Respondent and Mr. Kerr valued the decedent's estate at $100,000.00.   Under the § 7–601(b) compensation schedule, the maximum commissions allowed by law, without court approval, for an estate valued at $100,000.00, is "$1,800 plus 3.6% of the excess over $20,000" or $4,680.00.   Respondent's acceptance of $6,000 for her "legal engagement fee" exceeded the permissible amount under § 7–601(b).[14]

---

**12.**  The record indicates that only Mr. Kerr and Respondent are listed as interested parties on the Estate.

**13.**  This possible ambiguity, however, does not relieve Respondent from observing the statutory guidelines for seeking compensation.

**14.**  Even if Respondent had received creditor approval for the permissible amount of compensation under § 7–601(b), Respondent should, at a minimum, have kept the payment in escrow until all services were rendered to the Estate because Respondent received the payment at the start of her employment, based on the *estimation* of the value of the Estate.   *See* MRPC 1.15 (safekeeping property).   Indeed, during the administration of the Estate, the value of the Estate dropped significantly from the value estimated in the "Petition for Probate."   At the time of the Revised Third, Not Final Administration Account filed November 8,

### Respondent's Exception To Hearing Judge's Conclusions Concerning Rule 1.1

Respondent next excepts to the hearing judge's conclusion that she violated Rule 1.1 (Competence). Respondent claims that her "alleged failure to file [the] Third and Final Administration Account . . . is due to the fact that Respondent . . . has been continually harassed by the Orphans' Court [and its] failure to give Respondent . . . notice and due process." Specifically, Respondent complains that the Orphans' Court failed to give advanced notice of its intent to remove her and Mr. Kerr as Co–Personal Representatives of the Estate. Respondent also asserts that she "has been diligently attempting to file the Third and Final Administration Accounts, but the Orphans' Court . . . has hindered her efforts" by not allowing her to correct the account after its filing on May 5, 2005, and by not providing her with notice of the Orphans' Court's approval or disapproval of her filed accounting. In addition, Respondent claims the "Orphans' Court held her in Civil Contempt a second time without any proper notice." We shall overrule Respondent's exception.

Respondent's exception does not address the underlying reasoning for the hearing judge's conclusion that she violated Rule 1.1 (Competence), except to complain about her treatment by the Orphans' Court. The hearing judge concluded that Respondent's handling of the Estate violated Rule 1.1 because "despite the eight years of problems that she ha[d] been experiencing with several courts in administering this Estate, [ ] Respondent refuse[d] to admit her ignorance of the probate procedures involved or to seek and accept help from qualified legal professionals in getting her problems solved." The hearing judge found that "[h]er stubbornness over the past eight years to find the guidance necessary to close the

---

2006, the Estate was then valued at $68,140.21, which results in an allowable commission, under the § 7–601(b) schedule, of $3,533.05. Accordingly, any compensation received as either commissions or attorney's fees, in excess of $3,533.05 (provided the estate's value is $68,140.21), without court approval, is unauthorized because of the formula set forth in § 7–601(b).

Estate amounts to incompetence." The record clearly supports the hearing judge's conclusion. The record shows that Judith Nina Kerr died on February 27, 1999. According to the records of the Register of Wills of Baltimore County, the Estate, valued at approximately $60,000, was not closed until December 20, 2007. Those findings indicate 8 years, 9 months and 23 days had lapsed from the date of Ms. Kerr's death until the closing of her Estate. In addition, the record shows that Respondent collected fees in a manner in direct contravention to the statutory provisions contained in the Maryland Estates and Trust Article.

Moreover, the record shows that Respondent failed to timely file many of the documents necessary to administer the Estate, leading to her removal as Co–Personal Representative. Pursuant to § 7–201, Respondent and/or Mr. Kerr had the duty to file an Inventory with the Register of Wills within three months after their appointments as CoPersonal Representatives. On June 11, 1999, the Orphans' Court issued a Delinquent Notice to Mr. Kerr and Respondent for their failure to file an Inventory and Information Report.[15] Thereafter, a summons and a request for show cause order was issued to the Sheriff of Baltimore County to "cite and summons" Respondent to appear before the Orphans' Court to explain why the Inventory had not been filed as of July 13, 1999. On July 26, 1999, Respondent filed the required Inventory.

On December 10, 1999, the Orphans' Court issued a Delinquent Notice to Mr. Kerr and Respondent for their failure to render and file a First Administration Account for the Estate. Pursuant to § 7–305(a)(1), Respondent and Mr. Kerr were required to render an account of the Estate within 9 months of their appointment, on or before December 4, 1999. In response to the notice, Respondent requested two extensions, which were granted; however, a second Delinquent Notice was then issued on February 18, 2000, when Respondent did

---

**15.** Respondent and Mr. Kerr thereafter filed the Information Report on the same day that the court sent out the delinquent notice.

not comply with the extended deadline. A hearing on the delinquency was then scheduled for March 8, 2000; neither Respondent nor Mr. Kerr appeared for that hearing. On March 9, 2000, the Orphans' Court issued a summons and a request for show cause order was issued to the Sheriff of Baltimore County to "cite and summons" Respondent and Mr. Kerr to appear before the Orphans' Court to explain why the First Administration Account had not been filed as of February 11, 2000. Respondent and Mr. Kerr did not file the "First, Not Final Administration Account" with the Register of Wills until April 10, 2000.[16]

The Orphans' Court's issuance of Delinquent Notices and Summones continued throughout the administration of the Estate. The court issued a Delinquent Notice on October 17, 2000, for Respondent's and Mr. Kerr's failure to file a Second Administration Account within six months after the First Administration Account, October 10, 2000. *See* § 7–305(a)(2). Respondent and Mr. Kerr then failed to appear on November 11, 2000, for a scheduled hearing on the matter. On November 27, 2000, the Orphans' Court issued a summons and a request for show cause order directing Respondent and Mr. Kerr to appear before the Orphans' Court to explain why the Second Administration Account had not been filed as of October 10, 2000. Respondent and Mr. Kerr thereafter filed the "Second, Not Final Administration Account" on January 8, 2001. The Orphans' Court approved the account the same day.

The Orphans' Court then had to issue a Delinquent Notice on July 16, 2001, for Respondent's and Mr. Kerr's failure to file a Third Administration Account on or before July 9, 2001. In response, Respondent requested an extension from the Orphans' Court to complete the account; an extension was granted until September 10, 2001. On February 22, 2002, the Orphans' Court issued a sixth Delinquent Notice, this time for

---

**16.** At this time, Respondent and Mr. Kerr also filed a "Supplemental Inventory" with the Register of Wills. The Orphans' Court approved the "First, Not Final Administration Account" the same day.

Respondent's and Mr. Kerr's failure to file a Third Account, an Amended Inventory, and a Supplemental Information Report by September 10, 2001. On April 1, 2002 and then on May 3, 2002, the Orphans' Court issued summons and requests for show cause order directing Respondent and Mr. Kerr to appear before the Orphans' Court to explain why these requested documents still had not yet been filed.[17] It was not until May 1, 2002 that Respondent and Mr. Kerr filed a "Third, Not Final Administration Account." The Orphans' Court initially approved the account, but denied the account two days later when Respondent indicated in a letter to the Register of Wills that she had not included several assets in the accounting.

Despite repeated interactions with the Register of Wills and the Orphans' Court regarding Respondent's and Mr. Kerr's tardiness in filing the documents, Respondent and Mr. Kerr did not seek assistance in the administration of the Estate. Consequently, on May 3, 2002, a petition to remove Respondent and Mr. Kerr as Co–Personal Representatives was initiated by the Orphans' Court because of Respondent's and Mr. Kerr's failure to file a Supplemental Inventory, a Supplemental Information Report, and a Third Administration Account. The petition was granted and the Court removed Respondent and Mr. Kerr as CoPersonal Representatives of the Estate on August 28, 2002. The Order mandated that Respondent and Mr. Kerr file the "Third and Final Administration Account" and turn over all assets and financial records in their possession within thirty days of the date of the Order. Despite this significant action, Respondent failed to file the Third and Final Administration Account within the 30 day time-limit prescribed by the order of the Orphans' Court, leading to additional court interactions including the imposition of Civil Contempt by the Orphans' Court on June 2, 2005.

It is clear from the record that Respondent's failure to properly comply with probate law in the administration of the

---

**17.** Respondent filed Amended and Supplemental Inventories on June 27, 2006.

Estate was due to her inexperience and her unwillingness to obtain the help she needed to properly administer the estate. As the hearing judge stated in his analysis, "inexperience does not necessarily amount to a violation of this Rule." We have said, however, that attorneys who undertake legal work in areas unfamiliar to them "must take careful thought as to their competence to practice in 'specialty' areas," like the administration of estates. *Attorney Grievance Comm'n v. Brown*, 308 Md. 219, 234, 517 A.2d 1111, 1118 (1986). If an attorney "plunges into a field in which he or she is not competent, and as a consequence makes mistakes that demonstrate incompetence, the Code [of Professional Responsibility] demands that discipline be imposed; that one is simply a general practitioner who knew no better is no defense." *Brown*, 308 Md. at 234–35, 517 A.2d at 1119. As Comment [2] to Rule 1.1 explains:

> A lawyer need not necessarily have special training or prior experience to handle legal problems of a type with which the lawyer is unfamiliar. A newly admitted lawyer can be as competent as a practitioner with long experience. Some important legal skills, such as the analysis of precedent, the evaluation of evidence and legal drafting, are required in all legal problems. Perhaps the most fundamental legal skill consists of determining what kind of legal problems a situation may involve, a skill that necessarily transcends any particular specialized knowledge. A lawyer can provide adequate representation in a wholly novel field through necessary study. Competent representation can also be provided through the association of a lawyer of established competence in the field in question.

It is clear that Respondent did not employ the requisite knowledge and skill to administer the Estate or to comply with the Orphans' Court's orders. Therefore, we overrule this exception.

### Respondent's Exceptions To Hearing Judge's Conclusions Concerning Rule 1.15

Respondent also excepts to the hearing judge's statement that "Respondent violated Rule 1.15 when she failed to

turn over all assets of the Estate and all financial records in [her and Mr. Kerr's] possession to the Successor Personal Representative, when she admittedly failed to locate a Carefirst BCBS of Maryland check payable to the Estate of Judith Nina Kerr in the amount of $196.80, and when she failed to file a Third and Final Administration Account approved by the Orphans' Court." We shall address each of Respondent's three exceptions in turn.

As to the hearing judge's finding that Respondent "admittedly failed to locate a CareFirst BCBS of Maryland check ... in the amount of $196.80," Respondent asserts that: "[I]f there is a problem with the [CareFirst BCBS] check, it can be reissued, because after six months the check [is] no longer a negotiable instrument. The [Successor] Personal Representative has had this information since 2005 and on information and belief has not sought the reissuance of the check." Respondent's argument fails to address the hearing judge's finding that the Orphans' Court found that Respondent "testified she has in her possession a CareFirst BCBS of Maryland check made payable to the Estate of Judith Nina Kerr for $196.80 which she is now unable to locate and has failed to turn over to the Successor Personal Representative." Instead, Respondent's statement merely explains what actions the Successor Personal Representative could have taken to resolve Respondent's failure to safe keep this asset of the estate. The hearing judge's findings are based on the June 2, 2005, order of the Orphans' Court holding Respondent and Mr. Oliver W. Kerr, Jr. in Civil Contempt. The Orphans' Court made the following finding in its order:

> **WHEREAS** Ms. Kendrick testified she has in her possession a Carefirst BCBS of Maryland check made payable to the Estate of Judith Nina Kerr for $196.80 which she is now unable to locate and failed to turn over to the Successor Personal Representative[.]

Respondent did not appeal the Order and may not now attempt to relitigate that decision before this Court. As such, we conclude that the hearing judge's finding is supported by clear and convincing evidence.

Second, as to the hearing judge's statement that "she failed to turn over all assets of the Estate and all financial records in [her] possession to the Successor Personal Representative," Respondent asserts that: "Under oath and penalty of perjury on August 6, 2007, Successor Personal Representative Schrebler admitted that these estate assets were turned over to him in May 2005." The record, however, clearly establishes that Respondent did not transfer to the Successor Personal Representative the CareFirst BCBS check. The record also indicates that on June 2, 2005, the Orphans' Court found an "Account retention amount of $2,755.58," an amount which Respondent neither accounted for nor had transferred to the Successor Personal Representative. The failure of Respondent to account for $2,755.58, of Estate funds, is a clear violation of MRPC 1.15(a), which requires that "[c]omplete records of such account funds and of other property [ ] be kept by the lawyer." Therefore, the exception is overruled.

Last, as to the hearing judge's statement that Respondent "failed to file a Third and Final Administration Account approved by the Orphans' Court," Respondent asserts that she filed the Third and Final Administration Account on May 5, 2005, but was denied the opportunity to correct the account. She explains: "Had Respondent ... been permitted by the Orphans' Court to correct the record, the retention amount [of $2,775.58], which is in dispute, would have been accounted for." Respondent's explanation, however, does not address her failure to file the Third and Final Administration within the 30–day time period prescribed by the Orphans' Court. While her numerous appeals of the Orphans' Court's order removing her as co-personal representative stayed the Orphans' Court's original 30–day mandate until this Court's denial of her petition for writ of certiorari on December 23, 2004, Respondent did not file the Estate's Third and Final Administration Account until May 5, 2006—1 year, 3 months, 11 days after the Orphans' Court's January 24, 2005, deadline. Respondent provided no explanation for her failure to adhere to the mandate of the Orphans' Court. In neglecting to do so, Respondent also failed to provide the required accounting of

the Estate's assets. *See Attorney Grievance Comm'n v. Roberson,* 373 Md. 328, 818 A.2d 1059 (2003). Respondent's exception is overruled.

### Respondent's Exceptions To Hearing Judge's Conclusions Concerning Rule 1.3

■ Lastly, Respondent excepts to the hearing judge's conclusion that she violated Rule 1.3, asserting that the Orphans' Court failed to comply with "the notice requirements and due process safeguards granted" to her. Specifically, Respondent states that she attempted to refile documents with the Register of Wills on August 6, 2007, but has not been given "proper notice that those filings were denied." In addition, Respondent complains of an invasion of her privacy as she was detained by the Baltimore County Sheriff's Office on a Writ of Body Attachment. Again, Respondent's exception does not address the underlying analysis used by the hearing judge. The hearing judge noted that Respondent "repeatedly failed to file a Third and Final Administration Account approved by the Orphans' Court." The record clearly supports the hearing judge's conclusion that Respondent failed to properly file the required Third and Final Administration Account.

■ The record indicates that Respondent (and Mr. Kerr) attempted several times to file a Third and Final Administration Account with the Register of W ills, but the accounts were not approved by the Orphans' Court. For example, on or about May 1, 2002, Respondent and Mr. Kerr filed a "Third, Not Final Administration Account." The Orphans's Court approved the account the same day. The approval, however, was short lived as on May 3, 2002, the Orphans' Court rescinded its initial approval of the account. Its reasoning for doing so is not clear from the record, though a letter from Respondent to the Register of Wills indicates that the accounting did not include recently discovered assets. After being removed as Co–Personal Representative of the Estate and ordered to file the Third and Final Administration Account by the Orphans' Court, in August 2002, Respondent

waited until May 16, 2006, to file a "Revised Third and Final Administration Account." This filing was intercepted by Mr. Anthony C. Butta, the court auditor [18] because of deficiencies he found in the accounting. Specifically, Mr. Butta noted in a memorandum to Respondent that the "start figure [of the account] is incorrect." On September 21, 2006, Mr. Butta, sent Respondent, Mr. Kerr, and the Successor Personal Representative a detailed letter advising Respondent how to properly file the "Revised Third, Not Final Administration Account." Thereafter, on or about November 8, 2006, Respondent filed a "Petition for the allowance of commissions and counsel fees" along with a "Second Revised Third And Not Final Administration Account." Both were denied by the Orphans' Court. The account was not approved because of Respondent's and Mr. Kerr's failure to pay the required inheritance tax on the Estate and because Respondent included, in the final accounting, her request for counsel fees.[19] Thereafter, Respondent filed, in the Orphans' Court, a Motion to Alter or Amend Judgment, which was denied as untimely filed.

It is clear from the record that Respondent has violated Rule 1.3. Respondent was not diligent in responding to the Orphans' Court's requests to properly file the Third and Final Administration Account, not diligent in responding to the guidance given by Mr. Butta concerning the correct procedure or form for submission of an account, and not diligent in timely filing documents with the Register of Wills. In sum, Respondent failed to handle the administration of the Estate in a reasonably diligent matter. Therefore, Respondent's exception is overruled.

---

**18.** The auditor functions as the accountant of the court and is required to investigate and review the accounts filed with the court in order to put the papers submitted in proper order for action by the court. *Robinson v. Brodsky*, 268 Md. 12, 22–24, 298 A.2d 884, 889 (1973).

**19.** Soon after her appeal, on or about February 21, 2007, Mr. Butta informed Respondent that the payment accompanying her November 8, 2006, filing of "Third, Not Final Administration Account" was returned marked "insufficient funds."

## SANCTION

Having concluded that Respondent violated Rules 1.1, 1.3, 1.5, and 1.15, we must determine the proper sanction. Bar Counsel recommends that Respondent be indefinitely suspended from the practice of law "until she has made full restitution to the Estate and has proven that she is capable of competently practicing law." Bar Counsel contends this is an appropriate sanction because Respondent accepted fees "which exceeded the statutory amount permitted to be taken without Orphans' Court approval," failed to return fees to the Estate after the Orphans' Court denied her approval for her proposed fees, failed to pay the required inheritance tax before making distributions to the decedent's heirs, and failed to both account for and turn over estate funds and assets to the Successor Personal Representative. Bar Counsel, cites the following cases: *Attorney Grievance Comm'n v. Seiden,* 373 Md. 409, 818 A.2d 1108 (2003), *Attorney Grievance Comm'n v. Owrutsky,* 322 Md. 334, 587 A.2d 511 (1991), *Attorney Grievance Comm'n v. Thompson,* 376 Md. 500, 830 A.2d 474 (2003), and *Attorney Grievance Comm'n v. Sullivan,* 369 Md. 650, 801 A.2d 1077 (2002). Further, Bar Counsel points out that "[t]his Court has imposed severe sanctions on attorneys who have improperly taken fees from an estate without approval of the Orphans' Court."

Respondent asserts that the cases cited by Bar Counsel are inapposite because "[i]n this case, [ ] Respondent [ ] had the approval and authorization of the heir, ultimate distributee, and former copersonal representative when he signed the checks." In addition, Respondent notes that she has paid the Estate's creditors and has "paid the inheritance tax on non-probate assets from Estate funds with the approval of Mr. Kerr." Last, Respondent notes that the hearing judge did not find that she had acted with dishonesty in violation of MRPC 8.4. Respondent does not offer this Court a suggestion as to her sanction.

"It is well settled that our obligation in disciplinary matters is to protect the public and maintain the public's

confidence in the legal system rather than to punish the attorney for misconduct." *Attorney Grievance Comm'n v. Ward,* 394 Md. 1, 32–33, 904 A.2d 477, 496 (2006) (citing *Attorney Grievance Comm'n v. Powell,* 369 Md. 462, 474, 800 A.2d 782, 789 (2002) and *Attorney Grievance Comm'n v. Kolodner,* 316 Md. 203, 208, 557 A.2d 1332, 1334 (1989)). This Court's goal, however, "when imposing sanctions[,] is to maintain the integrity of the legal profession and to prevent misconduct by other attorneys." *Id.* The severity of the sanction depends on several things, including "the circumstances of each case, the intent to which the acts were committed, the gravity, nature and effects of the violations as well as any mitigating factors." *Id.* To be sure, we have stated that "the gravity of misconduct is not measured solely by the number of rules broken but is determined largely by the lawyer's conduct." *Attorney Grievance Comm'n v. Briscoe,* 357 Md. 554, 568, 745 A.2d 1037, 1044 (2000).

Violations of the Rules stemming from the taking of fees without prior court approval and the mishandling of accounts have warranted both suspensions and disbarments in prior cases before this Court. In *Attorney Grievance Comm'n v. Seiden,* 373 Md. 409, 818 A.2d 1108 (2003), we imposed a indefinite suspension, with leave to reapply after thirty days, because an attorney took his fee from the estate without the permission of the Orphans' Court. In *Attorney Grievance Comm'n v. Sullivan,* 369 Md. 650, 801 A.2d 1077 (2002), we disbarred an attorney who, as the personal representative of an estate, failed to administer the estate and took over $50,000 from the estate without prior approval of the Orphans' Court. In *Attorney Grievance Comm'n v. Thompson,* 376 Md. 500, 830 A.2d 474 (2003), we indefinitely suspended an attorney for mishandling the estate, including failing to timely file reports and accounts, failing to pay estate taxes at the time of distribution, and failing to obtain prior approval of the Orphans' Court before taking fees. Last, in *Attorney Grievance Comm'n v. Owrutsky,* 322 Md. 334, 587 A.2d 511 (1991), we suspended an attorney for three years for his careless and

neglectful handling of an estate, his mishandling of estate funds, and his taking of fees without prior court approval.

In this case, the hearing judge concluded, and we agree, that Respondent's misconduct was not due to greed or dishonesty, but rather due to obstinateness and incompetence in probate matters. Respondent's inability to accept responsibility in the mishandling of the Estate leaves much to be desired. Respondent, however, has not been previously sanctioned by this Court for professional misconduct. Under the totality of the circumstances and in light of our relevant prior cases, we conclude that the appropriate sanction is an indefinite suspension. Re-application for admission should abide until, at a minimum, Respondent provides full restitution to the Estate.[20]

The suspension shall commence thirty (30) days after the filing of this Opinion.

**IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THIS COURT, INCLUDING THE COST OF TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16-761 FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST KARIN MARIE KENDRICK.**

---

20. The June 2, 2005, order of the Orphans' Court holding Respondent and Mr. Kerr in Civil Contempt mandated, among other things, that Respondent "shall reimburse to the [E]state the $6,000.00 in legal fees that were disbursed from the estate assets to her without Court authority. Said reimbursement shall be sent to Roland M. Schrebler, Esquire, Successor Personal Representative, within thirty (30) days from the date of this Court's order[.]" The order also mandated that Mr. Kerr and Respondent "shall make payment to the Successor Personal Representative of the [E]state the balance of the value of the estate assets unaccounted for consisting of $6,616.26[,] the cash balance reflected on [Respondent's] Third and Final Administration Account, $2,755.58[,] the retention amount reflected on the Account, and $196.80 representing the CareFirst BCBS of Maryland check made payable to the Estate. Said payment shall be made to the Successor Personal Representative within thirty (30) days from the date of the Court's Order[.]"