801 A.2d 1077

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Patrick Lewis SULLIVAN.**

**Misc. AG No. 28, Sept. Term, 2001.**

Court of Appeals of Maryland.

June 26, 2002.

Melvin Hirshman, Bar Counsel and James P. Botluk, Assistant Bar Counsel for the Attorney Grievance Commission of Maryland, for petitioner.

No argument on behalf of Respondent for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

BELL, C.J.

The Attorney Grievance Commission of Maryland, the petitioner, acting through Bar Counsel and at the direction of the Review Board, *see* Maryland Rule 16–709,[1] filed a Petition for Disciplinary Action against Patrick Lewis Sullivan, the respondent, charging him with misconduct, as defined by Rule 16–701.k,[2] in connection with his handling, as co-personal repre-

---

1. Rule 16–709(a), which formerly governed the filing of statements of charges by Bar Counsel, stated that "[c]harges against an attorney shall be filed by the Bar Counsel acting at the direction of the Review Board." Authorization to file charges in the Court of Appeals now comes from the Attorney Grievance Commission. See Maryland Rule 16–751, which was adopted November 30, 2000, effective July 1, 2001. The filing of charges with the Attorney Grievance Commission is governed by Rule 16–741, which provides as follows:

    "(a) Filing of Statement of Charges.

    (1) Upon completion of an investigation, Bar Counsel shall file with the Commission a Statement of Charges if Bar Counsel determines that:

    (A) the attorney either engaged in conduct constituting professional misconduct or is incapacitated;

    (B) the professional misconduct or the incapacity does not warrant an immediate Petition for Disciplinary or Remedial Action;

    (C) a Conditional Diversion Agreement is either not appropriate under the circumstances or the parties were unable to agree on one; and

    (D) a reprimand is either not appropriate under the circumstances or (i) one was offered and rejected by the attorney, or (ii) a proposed reprimand was disapproved by the Commission and Bar Counsel was directed to file a Statement of Charges."

2. That section provides:

    "Misconduct.—'Misconduct' means an act or omission by an attorney, individually or in concert with any other person or persons which violates the Maryland Rules of Professional Conduct, as

sentative of the estate of William Amoss, a former State Senator. Specifically, the petition alleged the violation, by the respondent, of the following Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16–812: 1.1 (Competence);[3] 1.3 (Diligence);[4] 1.15 (Safekeeping Property);[5] 8.1 (Bar admission and disciplinary matters);[6] and 8.4 (Misconduct).[7]

---

adopted by Rule 16–812, whether or not the act or omission occurred in the course of an attorney-client relationship."

Effective July 1, 2001, the definition of "professional misconduct" is codified at Maryland Rule 16–701(i), which adopts "the meaning set forth in Rule 8.4," in turn, adopted by Rule 16–812. Professional misconduct "includes the knowing failure to respond to a request for information authorized by this Chapter without asserting, in writing, a privilege or other basis for such failure."

3. That Rule requires a lawyer to "provide competent representation to a client." It also states that "[c]ompetent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

4. The mandate of Rule 1.3 is that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

5. As relevant, that Rule provides:

"(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property."

6. Rule 8.1(b) provides:

"An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

\* \* \* \*

"(b)fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

7. In part, Rule 8.4 provides that "it is professional misconduct for a lawyer to:

We referred the case to the Honorable J. William Hinkel of the Circuit Court for Baltimore County to conduct a hearing and to make findings of fact and draw conclusions of law. *See* 16–711.a.[8] Following the hearing, the hearing court made findings of fact, from which it concluded, as a matter of law, that the respondent did, in fact, commit each of the violations the petitioner charged.

State Senator William H. Amoss died on October 8, 1997, leaving two wills, the first dated April 29, 1996 and the second, October 6, 1997. The respondent, who had represented Senator Amoss in connection with various matters over some twenty years, was appointed personal representative pursuant to the second will.[9] When that will was voided as a result of the caveat filed by Senator Amoss's children, the respondent was again appointed personal representative. He was ordered to file an accounting.

Notwithstanding the order to file an accounting, the respondent failed to do so and took no substantial action to administer the estate. Consequently, a petition to remove the respondent as personal representative was filed by Senator Amoss's children. That matter was settled, however, when, with the approval of the Orphans' Court, the parties executed an agreement, under which the respondent promised to complete the administration of the estate promptly and diligently, in return for which he was permitted to remain the personal

---

"(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
"(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
"(d) engage in conduct that is prejudicial to the administration of justice; . . ."

**8.** Rule 16–711(a) provides:
"Findings. A written statement of the findings of facts and conclusions of law shall be filed in the record of the proceedings and copies sent to all parties."
*See* Rule 16–757, effective July 1, 2001.

**9.** The Senator's widow was appointed co-personal representative, but resigned in January 1998, leaving the respondent as the sole personal representative.

representative, entitled to twenty-five thousand ($25,000.00) dollars reimbursement for his services through the filing of the First Administration Account and an additional amount, up to twenty-five thousand ($25,000.00), when the estate was closed.

Despite the settlement agreement, the respondent still took no action to administer the estate. Nor did he respond to the inquiries from the legatees and their counsel or provide necessary information to the estate's accountant. Again the Amoss children petitioned the Orphans' Court to remove the respondent as personal representative. And again the parties reached a settlement, approved by the Orphans' Court, by the terms of which the respondent resigned immediately as personal representative and waived all commissions and compensation for work done after the First Administration Account. The Amoss children were appointed successor personal representatives.

The estate records that the respondent turned over to counsel for the successor personal representatives disclosed that the respondent had drawn twelve (12) to fifteen (15) checks, totaling $50,500.00, on the estate account, payable to himself. Thereafter, the respondent was sued by the successor personal representatives. Because the respondent did not answer, the Circuit Court for Harford County entered an Order of Default against him. It subsequently entered judgment against the respondent in the amount of twenty-five thousand five hundred dollars ($25,500.00), plus attorney's fees of twenty three thousand nine hundred and ninety nine dollars ($23,999.00). The respondent failed to comply with a subpoena, with which he had been served, to produce certain estate records at the hearing to establish damages; he neither appeared nor produced the designated records. He delivered the records that he was ordered to produce only after again being ordered by the court to do so and then literally at the last moment.

The respondent received three letters from Bar Counsel requesting that he respond to the complaint and the numerous

messages left by the petitioner's investigator in an attempt to interview him. Nevertheless, the respondent failed to respond to the written request of Bar Counsel or to the attempts by the petitioner's investigator to interview him.

The hearing court concluded that the respondent violated Rule 1.1, noting that the respondent "took little or no action to administer the estate" and that "[h]is gross neglect of his responsibilities ultimately led to his removal as personal representative. Moreover, the hearing court commented on the respondent's delay in turning over to the successor personal representatives estate records, necessitating their incurring substantial attorney's fees.

Rule 1.15(b) was violated, the hearing court determined, by the respondent's failure promptly to remit to counsel for the successor personal representatives estate funds and property. His failure to respond to letters from Bar Counsel and inquiries from an investigator constituted, for the hearing court, a violation of Rule 8.1(b).

As to the Rule 8.4 violation, the hearing court concluded: "Respondent violated Rule 8.4(b), (c) and (d) . . . by taking funds from the Amoss estate without the approval of the Orphans' Court and contrary to his agreement not to take compensation in excess of $25,000.00. Mr. Sullivan had no lawful claim to those funds and his taking of those funds for his personal use was theft and a criminal act reflecting adversely on his honesty, trustworthiness and fitness as an attorney. His taking of those funds was dishonest. Respondent's conduct throughout this matter, including his failure to administer the estate promptly, his dishonest and unlawful taking of funds, and his lack of communication with the successor personal representatives was conduct prejudicial to the administration of justice."

The petitioner has taken no exceptions to the findings of facts and conclusions of law. Consequently, the only issue to be resolved is the appropriate sanction to be imposed. It is well settled in this State that misappropriation, by an attorney, of funds entrusted to his or her care "is an act infected

with deceit and dishonesty and ordinarily will result in disbarment in the absence of compelling extenuating circumstances justifying a lesser sanction." *In re License of Thompson*, 363 Md. 469, 478–79, 769 A.2d 905, 911 (2000); *Attorney Grievance Comm'n of Maryland v. Sabghir*, 350 Md. 67, 84, 710 A.2d 926, 934 (1998); *Attorney Griev. Comm'n v. Casalino*, 335 Md. 446, 644 A.2d 43, 46 (1994); *Attorney Griev. Comm'n v. White*, 328 Md. 412, 417, 614 A.2d 955, 958 (1992); *Attorney Griev. Comm'n v. Bakas*, 323 Md. 395, 403, 593 A.2d 1087, 1091 (1991); *Attorney Griev. Comm'n v. Ezrin*, 312 Md. 603, 608–09, 541 A.2d 966, 969 (1988).

The petitioner recommends as the appropriate sanction that the respondent be disbarred, relying on *Attorney Griev. Comm'n v. Williams*, 335 Md. 458, 474, 644 A.2d 490, 497 (1994); *Attorney Griev. Comm'n v. Boehm*, 293 Md. 476, 481, 446 A.2d 52, 54 (1982); *Attorney Griev. Comm'n v. Pattison*, 292 Md. 599, 609, 441 A.2d 328, 333 (1982); *Attorney Griev. Comm'n v. Burka*, 292 Md. 221, 225, 438 A.2d 514, 517 (1981). The petitioner points out that the hearing court concluded that the respondent's actions were dishonest and constituted theft of estate funds. It suggests that there are no mitigating circumstances.

We agree and, accordingly, adopt the petitioner's recommendation.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(c), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST PATRICK LEWIS SULLIVAN.