In re Robert J. PLESHAW, Respondent.

A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 938241).

No. 09–BG–931.

District of Columbia Court of Appeals.

Argued June 30, 2010.

Decided Aug. 12, 2010.

---

James T. Maloney, Washington, DC, for respondent.

H. Clay Smith, III, Assistant Bar Counsel, with whom Wallace E. Shipp, Jr., Bar Counsel, and Judith Hetherton, Senior Assistant Bar Counsel, were on the brief, for Office of Bar Counsel.

Before WASHINGTON, Chief Judge, and KRAMER and FISHER, Associate Judges.

KRAMER, Associate Judge:

■ This case once again presents the question whether a conservator's misappropriation of estate funds involved "mere negligence" or recklessness. If we conclude that the respondent acted with more than "mere negligence," we are bound to disbar him under *In re Addams.*[1] We so conclude.

Following two days of hearings, respondent Robert Pleshaw was found to have violated thirteen disciplinary rules in his handling of matters for three different clients. The most egregious violation was the misappropriation of conservator funds,[2] which the hearing committee concluded was the result of negligence—a conclusion which the Board on Professional Responsibility later determined understated Pleshaw's culpability. The facts relevant to the misappropriation charge are as follows. In late 1997, the Probate Division of the Superior Court of the District of Columbia (the "probate court") appointed Pleshaw to serve as counsel to Joseph Riley in an intervention proceeding, and later to be the guardian/conservator for the Riley Estate. On March 6, 1998, Pleshaw filed a petition for compensation as court-appoint-

ed counsel with the probate court in the amount of $1,050. His petition was approved, and he withdrew this fee on May 7, 1998.

On May 17, 1999, Pleshaw again withdrew a fee, in the amount of $1,037.55, from the Riley Estate. This time, however, he neglected to file a petition for compensation before withdrawing these fees. Two days later, Pleshaw filed his First Accounting as conservator of the Riley Estate, in which he reported both the initial pre-authorized $1,050 withdrawal and the later unauthorized withdrawal of $1,037.55. This accounting was approved by the court, but not until February 7, 2000, over eight months after he withdrew the second fee.

Pleshaw once again withdrew funds without prior court authorization on June 11, 2001, in the amount of $1,652. This time he filed for court approval before withdrawing his fee. In fact, he filed two accountings with the court, one on October 26, 2000, and one on January 12, 2001. The court did not approve his request for the $1,652 commission in either instance; however, the documentation which Plesh-

1. 579 A.2d 190 (D.C.1990) (en banc) (establishing a *per se* disbarment rule for intentional misappropriation). While the *Addams* rule operates "presumptively," the presumption may be overcome only by a showing of "extraordinary circumstances warranting a departure from the rule." *In re Bach*, 966 A.2d 350, 365 (D.C.2009) (Board's opinion, adopted by the court). Respondent has made no such showing. *See, e.g., id.* at 354 (Ferren, J., concurring).

2. Rule 1.15(a) prohibits misappropriation of entrusted funds:

A lawyer shall hold property of clients or third persons that is in the lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in a financial institution which is authorized by federal, District of Colum-

bia, or state law to do business in the jurisdiction where the account is maintained and which is a member of the Federal Deposit Insurance Corporation, or the Federal Savings and Loan Insurance Corporation, or successor agencies. Other property shall be identified as such and appropriately safeguarded; provided, however, that funds need not be held in an account in a financial institution if such funds (1) are permitted to be held elsewhere or in a different manner by law or court order, or (2) are held by a lawyer under an escrow or similar agreement in connection with a commercial transaction. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

aw received did not indicate the court's disapproval of the $1,652 commission.[3] Constance Stark, Esq., the former Register of Wills who testified for Bar Counsel regarding probate court procedures, indicated, when pressed, that it would be "reasonable" for an attorney to assume that an auditor would contact him if portions of the accounting had not been not approved. She also testified, however, that "I still take the position that the record is there and lawyers practicing in the [Probate] Division ... would be well advised to check the file."

On July 21, 2003, the probate court issued an order finding that Pleshaw had made payments to himself totaling $2,689.55 without the court's prior approval and referred the matter to the Office of Bar Counsel. Notably, that order indicated that Pleshaw had already "re-deposited" the $2,689.55 to the Riley Estate. The hearing committee recommended that Pleshaw be suspended for one year. On review, the Board affirmed all of the hearing committee's findings of disciplinary violations, with the exception of its finding of negligent misappropriation of conservator funds.[4] The Board disagreed with the hearing committee's finding because it found "clear and convincing evidence that the misappropriation amounted to more than simple negligence." The Board concluded that Pleshaw's conduct constituted reckless misappropriation of entrusted funds and recommended disbarment.

When considering a Report and Recommendation from the Board on Professional Responsibility, we "accept the findings of fact made by the Board unless they are unsupported by substantial evidence in the record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted."[5] While we defer to the Board's findings of fact, we review the Board's determinations of disciplinary violations *de novo*.[6] Notwithstanding the deference accorded to the Board's factual findings and its recommendation, "[u]ltimately ... the system of attorney discipline, including the imposition of sanctions, is the responsibility and duty of this court."[7]

### Legal Analysis

We begin with the Board's finding of reckless misappropriation of conservator funds. Pleshaw does not dispute that he misappropriated funds and we agree with the Board that substantial evidence in the record supports this finding.[8] Pleshaw does contend, however, that the misappropriation was negligent, not reckless, and urges us to impose a suspension instead of disbarment. Because we agree with the Board that Pleshaw's misappropriation of entrusted funds was reckless, we are required to disbar him on the authority of

---

**3.** Apparently, at this time, it was the probate court's practice to return only the final page of each accounting, with the court official's signature of approval for the overall accounting.

**4.** "[T]he Board is obliged to accept the hearing committee's factual findings if those findings are supported by substantial evidence in the record, viewed as a whole." *In re Cleaver–Bascombe*, 986 A.2d 1191, 1194 (D.C.2010)

(internal quotation marks and citation omitted).

**5.** D.C. Bar R. XI, § 9(h)(1); *accord Cleaver–Bascombe, supra* note 4, 986 A.2d at 1194.

**6.** *In re Micheel*, 610 A.2d 231, 234 (D.C.1992).

**7.** *In re Goffe*, 641 A.2d 458, 464 (D.C.1994).

**8.** *See* D.C. Bar R. XI, § 9(h)(1), *supra* note 5.

*Addams.*[9]

■ We have defined misappropriation as "any unauthorized use of client's funds entrusted to [an attorney], including not only stealing but also unauthorized temporary use for the lawyer's own purpose, whether or not [he] derives any personal gain or benefit therefrom."[10] We have clearly established that "in virtually all cases of misappropriation, disbarment will be the only appropriate action unless it appears that the misconduct resulted from nothing more than simple negligence."[11] In order to prove recklessness, Bar Counsel has the burden of proving by clear and convincing evidence[12] that Pleshaw "handled entrusted funds 'in a way that reveals either an intent to treat the funds as the attorney's own or a conscious indifference to the consequences of his behavior for the security of the funds.' "[13] Critically, under our precedent, "conscious indifference" suffices; disbarment "is not reserved for the most egregious and dishonest" misappropriations.[14]

Here, after being appointed conservator and properly withdrawing his initial fee pursuant to court authority, Pleshaw twice paid himself commissions from funds in the Riley Estate Account without obtaining court permission beforehand, in violation of D.C.Code § 21–2060[15] and Superior Court Probate Rule 308.[16] Pleshaw thus demonstrated that he was aware of and understood the conservatorship rules, but he nonetheless disregarded them for his own convenience.[17] This alone constitutes

9. *See In re Utley,* 698 A.2d 446, 450 (D.C. 1997) ("We hold that respondent misappropriated estate funds from her client and that this misconduct resulted from more than simple negligence. On the authority of *Addams,*[ ] we are therefore required to disbar her from the practice of law.").

10. *In re Cloud,* 939 A.2d 653, 659 (D.C.2007) (internal citation omitted).

11. *Addams, supra* note 1, 579 A.2d at 191.

12. *In re Ray,* 675 A.2d 1381, 1387 (D.C.1996).

13. *In re Fair,* 780 A.2d 1106, 1110 (D.C.2001) (quoting *In re Anderson,* 778 A.2d 330, 339 (D.C.2001)).

14. *Bach, supra* note 1, 966 A.2d at 352 (internal citation omitted) (disbarring attorney-conservator who paid himself fees prior to receiving court approval because a nursing home had made a claim against the estate and the attorney was afraid that there would soon be no funds left for his fee).

15. D.C.Code § 21–2060 provides, in relevant part:

(a) As approved by order of the court, any visitor, attorney, examiner, conservator, special conservator, guardian ad litem, or guardian is entitled to compensation for services rendered either in a guardianship proceeding, protective proceeding, or in connection with a guardianship or protective arrangement. Any guardian or conservator is entitled to reimbursement for room, board, and clothing personally provided to the ward from the estate of the ward, but only as approved by order of the court. Compensation shall be paid from the estate of the ward or person or, if the estate of the ward or person will be depleted by payouts made under this subsection, from a fund established by the District.

16. D.C.Super. Ct. Prob. R. 308 (2008) provides, in relevant part:

(a) Compensation by order of the Court. Any visitor, attorney, examiner, conservator, special conservator, guardian ad litem, or guardian is entitled to reasonable compensation for services rendered in an intervention proceeding. Compensation paid from the assets of the subject of the proceeding, protected individual or ward, or from the Guardianship Fund ..., must be approved by the Order of the Court before being paid.

17. We recognize that the circumstances surrounding Pleshaw's second misappropriation make it difficult to determine whether that misappropriation was knowing and deliber-

"conscious indifference."[18] Pleshaw contends that his conduct is analogous to that of the attorney in *In re Fair*, where we concluded that the "ambiguous probate culture" surrounding court authorization of fees and the fact that the relevant probate law changed less than a year after her violation mitigated an attorney's misappropriation of funds such that it did not rise to recklessness.[19] We disagree. The fact that Pleshaw properly followed the rules when he withdrew his initial fee demonstrates that the conservatorship culture is not "ambiguous." Moreover, the conservatorship laws requiring prior court approval for withdrawal of estate funds did not change around the time of Pleshaw's mis-

appropriations, and notably have not changed to this day.[20]

Pleshaw urges us to consider his prompt repayment of the funds and the fact that he did not commingle the misappropriated funds with his own as mitigating factors.[21] These factors do not help him overcome a finding of recklessness because proof of improper intent is not required.[22] We recognize the seeming oddity of imposing the identical severe sanction on attorneys who take legitimately earned fees without prior court authorization[23] as for attorneys who knowingly steal. Nonetheless, we are bound to follow[24] our long-standing judicial determina-

---

ate. We do consider it imprudent that Pleshaw failed to examine the file after receiving general court approval of his accounting, which Ms. Stark testified would have been the recommended practice for a conservator at that time. In any event, in light of our conclusion that we must disbar Pleshaw for his first reckless misappropriation, we do not need to decide whether the second misappropriation was reckless.

**18.** *Fair, supra* note 13, 780 A.2d at 1110. *See also Utley, supra* note 9, 698 A.2d at 450 (the deliberate nature of attorney's taking of conservator fees before obtaining court approval was dispositive to a finding of reckless misappropriation).

**19.** *Id.* at 1111.

**20.** There is presumably good reason for this. While the hearing committee in *Fair* concluded that "the repeal has to be read to reflect a legislative judgment that estates can be properly administered without requiring prior court approval of fee withdrawals by fiduciaries, and that there is nothing morally or ethically offensive about such a practice," 780 A.2d at 1111, there has not been such a legislative determination with regards to the proper administration of conservatorships. The fact that conservators are appointed for wards of the court precisely because there is no one else to guard and manage their funds mandates strict oversight by the court of these relationships.

**21.** *See Bach, supra* note 1, 966 A.2d at 351 ("But attorneys heretofore disbarred for misappropriation—including Addams himself—have likewise claimed they had earned or were otherwise entitled to the funds, and the court has been unmoved by such expectations of (or wagers of) after-the-fact ratification.") (internal citations omitted). *See also Utley, supra* note 9, 698 A.2d at 450 (rejecting attorney's reliance on later "ratification"); *In re Robinson,* 583 A.2d 691, 692 (D.C.1990) (finding the following mitigating factors insufficient to overcome the *Addams* presumption of disbarment: "the relatively small amount of money, the relatively short period of time during which the client was denied the misappropriated funds, the absence of financial harm to the client, the fact that the misappropriation involved a single client, the relative inexperience of respondent, the absence of a prior disciplinary record, and the character testimony offered on respondent's behalf").

**22.** *In re Carlson,* 802 A.2d 341, 348 (D.C. 2002); *Micheel, supra* note 6, 610 A.2d at 233.

**23.** While acknowledging that such conduct is not as egregious as intentional theft, we note that an attorney does not know that a fee is legitimately earned until he has obtained court approval of that fee. Ensuring accurate fee calculations is the purpose behind D.C.Code § 21–2060 and Superior Court Probate Rule 308.

**24.** *See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971) ("[N]o division of this court will

tion that misappropriation in any form is serious enough to warrant disbarment.[25]

We conclude that the record demonstrates that Pleshaw was familiar with the rules requiring a fiduciary to petition the court for permission before taking compensation from an estate. We agree with the Board that "the record evidence as a whole shows a clear pattern of 'conscious indifference' by [Pleshaw] to 'the security of funds' he held as a fiduciary." Accordingly, we adopt the Board's recommendation to disbar Pleshaw.[26]

*So ordered.*

overrule a prior decision of this court[;] ... such result can only be accomplished by this court en banc.").

25. Indeed, in *Bach*, the Board urged this court to reconsider the *Addams* rule in cases where the attorney's misconduct did not constitute intentional theft. We find our observations in *Bach* dispositive here:

> [W]hile disbarment may appear "draconian" as applied to respondent's conduct, the Board has not defined for us an exception of principle to *Addams'* rule that does not risk "simply paying lip service" to it. Disbarment under *Addams* is not reserved for the "most egregious and dishonest" in-

stances of intentional misappropriation, and the Board's own recommendation of disbarment effectively admits that respondent's conduct differed only in degree, not kind, from cases in which the *Addams* rule has been applied unyieldingly.

*Bach, supra* note 1, 966 A.2d at 352.

26. It is unnecessary for us to determine the appropriate sanctions for Pleshaw's many other disciplinary violations. *See Bach, supra* note 1, 698 A.2d at 353 n. 7 (citing *In re Gil*, 656 A.2d 303, 304 (D.C.1995) (decision that attorney must be disbarred makes it unnecessary to consider Bar Counsel's arguments regarding additional violations of disciplinary rules)).