15 A.3d 777

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Robert J. PLESHAW.**

**Misc. Docket AG No. 43, Sept. Term, 2010.**

Court of Appeals of Maryland.

March 22, 2011.

Dolores O. Ridgell, Assistant Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for Petitioner.

No submission by Respondent.

Submitted to BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

### ORDER

Upon consideration of the petition for disciplinary or remedial action filed in the above entitled matter in accordance with Md. Rule 16–773 and a response only having been made by Bar Counsel to the show cause order, it is this 22nd day of March, 2011

**ORDERED,** by the Court of Appeals of Maryland (a majority concurring), that Robert J. Pleshaw be, and he is hereby, disbarred, effective immediately, from the practice of law in the State of Maryland, until such time he is reinstated to the practice of law in and by the District of Columbia, and it is further

**ORDERED,** that the Clerk of this Court shall forthwith strike the name of Robert J. Pleshaw from the register of attorneys, in this Court and shall certify that fact to the Trustees of the Client Protection Fund and the clerks of all judicial tribunals in the State in accordance with Rule 16–760(e).

HARRELL, J., dissenting, in which MURPHY, J., joins.

The District of Columbia Court of Appeals ("D.C. Court"), on 12 August 2010, disbarred Robert J. Pleshaw ("Pleshaw") from the practice of law in the District of Columbia ("D.C.") for an ethical faux-pas he committed in a probate matter in the Superior Court of the District of Columbia. As Pleshaw is also admitted to practice law in Maryland, the Attorney Grievance Commission of Maryland, acting through Bar Counsel, petitioned this Court under Md. Rule 16–773(b), to impose reciprocal discipline, *i.e.,* disbarment. We issued a Show Cause Order, requiring Pleshaw to "show cause ... why reciprocal discipline shall not be ordered by this Court." Pleshaw did not respond. The Court Majority disbarred Pleshaw by order.

That Pleshaw failed to respond, however, does not relieve this Court of its duty to engage in critical thought regarding what the proper reciprocal discipline is in this matter. Before imposing reciprocal discipline, this Court has a longstanding and independent duty to consider what discipline is appropriate, *i.e.,* consistent with Maryland attorney disciplinary jurisprudence. *See Attorney Grievance Comm'n v. Cafferty,* 376 Md. 700, 727, 831 A.2d 1042, 1058 (2003). With no apparent analysis, the Majority here imposes disbarment. Comparing the conceded facts of the present case to similar Maryland attorney disciplinary matters (in particular, *Attorney Grievance Commission v. Whitehead,* 390 Md. 663, 890 A.2d 751 (2006)) reveals to me, however, that disbarring Pleshaw is inconsistent with our cases and, therefore, not proper reciprocal discipline. Because, in my view, Pleshaw should not be disbarred, I dissent.

## I.

I open with a brief recitation of the relevant facts. In its opinion, *In re Robert J. Pleshaw,* 2 A.3d 169 (D.C.2010), the D.C. Court imposed disbarment on the basis of a single violation in a single incident involving the misappropriation of

conservator funds—the result of recklessness, rather than negligent or intentional misappropriation.

In 1997, the Probate Division of the Superior Court of the District of Columbia ("probate court") appointed Pleshaw to represent Joseph Riley in an intervention proceeding and later the Riley Estate itself. On 6 March 1998, Pleshaw filed a first petition for compensation, totaling $1,050.00. The probate court approved the petition, and Pleshaw withdrew that amount from the funds in the estate.

More than a year later, on 17 May 1999, Pleshaw withdrew funds again from the estate in the amount of $1,037.55 as payment for his legal services. Unlike the initial withdrawal, however, Pleshaw did not seek prior authorization from the probate court before paying himself. A couple of days after this withdrawal, Pleshaw filed with the probate court his First Accounting as conservator of the estate. In the report, he included not only the initial legal fee withdrawal, but the second such withdrawal as well.

There was a third withdrawal for legal services, in the amount of $1,652.00, also not pre-authorized. Unlike the second withdrawal, however, Pleshaw sought court approval before taking the third withdrawal. Although the probate court denied initially the third request for compensation, the notice from the probate court to Pleshaw did not indicate clearly that his request, in fact, was denied. Due to the ambiguity whether Pleshaw was notified adequately about the probate court's action regarding the third withdrawal, the D.C. Court limited expressly its legal analysis and sanction imposition to the circumstances of the second withdrawal.

The D.C. Court began its analysis by defining misappropriation as "any unauthorized use of [a] client's funds entrusted to [an attorney], including not only stealing but also unauthorized temporary use for the [attorney's] own purpose, whether or not [he or she] derives any personal gain or benefit therefrom." *In re Robert J. Pleshaw*, 2 A.3d at 173 (internal quotation marks and footnote omitted). Relevantly, under D.C. caselaw, an attorney misappropriates "recklessly" when he or she manifests a "conscious indifference to the conse-

quences of his behavior for the security of the funds." *Id.* (internal quotation marks and footnote omitted). If the D.C. Court determines that an attorney misappropriated recklessly, it will, "in virtually all cases," disbar him or her. *Id.* (internal quotation marks and footnote omitted).

Because Pleshaw "properly withdr[ew] his initial fee .... [,] he was aware of and understood the conservatorship rules...." *Id.* "[H]e nonetheless disregarded [those rules] for his own convenience," an act which "alone constitute[d] 'conscious indifference.'" *In re Robert J. Pleshaw,* 2 A.3d at 173–74. As a result, the D.C. Court was "bound to follow [its] long-standing judicial determination that misappropriation in any form ... warrant[s] disbarment." *In re Robert J. Pleshaw,* 2 A.3d at 174.

Following the D.C. Court's decision, Bar Counsel in Maryland petitioned this Court, on 21 October 2010, for reciprocal discipline and a Show Cause Order was issued.[1] In particular, Bar Counsel avers that Pleshaw violated Maryland Lawyers' Rules of Professional Conduct 1. 15,[2] 8.4(b),[3] (c),[4] and (d),[5] and

---

1. Maryland Rule 16–773(c) provides:

   Show cause order. When a petition and certified copy of a disciplinary or remedial order have been filed, the Court of Appeals shall order that Bar Counsel and the attorney, within 15 days from the date of the order, show cause in writing based upon any of the grounds set forth in section (e) of this Rule why corresponding discipline or inactive status should not be imposed.

2. Rule 1.15 states, in pertinent part, that "[o]ther property[, not belonging to the attorney,] shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained."

3. Rule 8.4(b) states that "[i]t is professional misconduct for a lawyer to ... commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects[.]"

4. Rule 8.4(c) states that "[i]t is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

5. Rule 8.4(d) states that "[i]t is professional misconduct for a lawyer to ... engage in conduct that is prejudicial to the administration of justice[.]"

the Maryland Code (1989, 2004 Repl.Vol.), Business Occupations and Professions Article, § 10–306.[6]

## II. Reciprocal Treatment

In our attorney disciplinary jurisprudence, we recognize that Maryland lawyers and citizens are best served when we impose "consistent dispositions for similar misconduct." *Cafferty,* 376 Md. at 727, 831 A.2d at 1058. Consistency provides the legal system with certainty, thereby guiding lawyers as to the proper course of action and protecting clients from overly-risky or overly-chilled behavior. *See Attorney Grievance Comm.'n v. Sperling,* 380 Md. 180, 191, 844 A.2d 397, 404 (2004) ("[T]he public interest is served when this Court imposes a sanction which demonstrates to members of the legal profession the type of conduct that will not be tolerated . . . .") (internal quotation marks and citations omitted); *Whitehead,* 390 Md. at 683, 890 A.2d at 763 (ruling that the ultimate goal of protecting the public is "further[ed] . . . by ensuring that every Maryland attorney is held to consistent standards of conduct"). That is why this Court is "duty-bound to assess for itself the propriety of the sanction imposed by [another] jurisdiction as well as the sanction recommended by the [Attorney Grievance] Commission [of Maryland]. . . ." *Cafferty,* 376 Md. at 727, 831 A.2d at 1058 (citation omitted); *see also id.* ("[This Court] tend[s] to . . . but [is] not required to . . . impose the same sanction as that imposed by the jurisdiction in which the misconduct occurred.") (citations omitted).

Stated another way, "we are concerned with what sanction a lawyer in Maryland could expect in response to similar conduct, *were it to have occurred in Maryland.*" *Attorney Grievance Comm'n v. Gordon,* 413 Md. 46, 56, 991 A.2d 51, 57 (2010) (emphasis added). As a result, "[t]he sanction will

---

6. Maryland Code (1989, 2004 Repl.Vol.), Business Occupations and Professions Article, § 10–306 states that "[a] lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer." Section 10–301(d) defines "trust money" as a "deposit, payment, or other money that a person entrusts to a lawyer to hold for the benefit of a client or a beneficial owner."

depend," not just on the decision of the foreign court, but also on "the unique facts and circumstances of each case," considered against the backdrop of our precedent. *Id.* (internal quotation marks and citation omitted). By first identifying factually-similar Maryland cases and then examining the sanctions imposed there, the Court is able to determine what discipline is truly reciprocal, *i.e.,* either what the foreign jurisdiction imposed or some other discipline more consistent with Maryland's attorney disciplinary jurisprudence. *See Gordon,* 413 Md. at 57, 991 A.2d at 57 ("[W]hen our cases demonstrate that we would apply a different sanction, had the conduct occurred or the case originated here," "we need not follow the original jurisdiction's sanction....").[7]

The absence of an explanation by the Majority of its reasons for imposing disbarment here is an especially worrisome vacuum considering that the foreign jurisdiction based its sanction of disbarment on grounds, *i.e.,* reckless misappropriation, that Maryland does not recognize. As I shall demonstrate, *infra,* Pleshaw's behavior merits a serious sanction, but less than disbarment, in Maryland.

### III. Pleshaw's Conduct Viewed through the Prism of Maryland's Attorney Disciplinary Rules and Jurisprudence

The D.C. Court found that Pleshaw's conduct was "reckless," but not necessarily "intentional." *In re Robert J. Pleshaw,* 2 A.3d at 173–74. Once it characterized Pleshaw's conduct as "reckless," the D.C. Court did not need to consider whether Pleshaw's conduct was "intentional." Maryland caselaw does not address "recklessness," but rather asks simply whether the behavior was "intentional" as opposed to "negligent or *otherwise unintentional* ...." *Cafferty,* 376 Md. at 724, 831 A.2d at 1057 (emphasis added).

---

7. With respect to the other jurisdiction's factual findings and final adjudication, the Court of Appeals accepts them as "conclusive." *See Attorney Grievance Comm'n v. Cafferty,* 376 Md. 700, 703–04, 831 A.2d 1042, 1044–45 (citing Maryland Rule 16–773(g)).

The consequences of resolving the issue of the actor's mental state are significant to our analysis. If an attorney misappropriated intentionally—*i.e.,* "with[ ] the *clear intent* to defraud his [or her] clients"—then disbarment will be imposed normally. *Cafferty,* 376 Md. at 725, 831 A.2d at 1057 (emphasis added); *Whitehead,* 390 Md. at 676, 890 A.2d at 759 (finding dispositive the fact that "[f]rom the record[,] it is not *apparent* that [the attorney's] conduct was intentional") (emphasis added); *see Attorney Grievance Commission v. Vanderlinde,* 364 Md. 376, 413–14, 773 A.2d 463, 485 (2001). If an attorney misappropriated negligently or otherwise unintentionally—*i.e.,* with something other than a clear intent to defraud—"indefinite suspension *ordinarily* is the appropriate sanction." *Cafferty,* 376 Md. at 722, 831 A.2d at 1055 (emphasis added) (citations omitted).

A. Maryland Cases Confronting Misappropriation in a Probate Context

Before following the D.C. Court and imposing disbarment in this State, the Court needs to conclude, through an independent examination of relevant precedent, that these facts demonstrate "intentionality" as a matter of law, *i.e.,* if Pleshaw's "clear" and "apparent" intent was to defraud the estate. If Pleshaw acted negligently or "otherwise unintentional[ly]," as those terms are defined under Maryland caselaw, then the Court should act accordingly to impose appropriate reciprocal discipline, but not disbarment.

As applies to similar circumstances in D.C., an attorney representing a Maryland estate must seek approval from the relevant court before withdrawing estate funds as compensation for legal services. Md.Code (1974, 2001 Repl.Vol.), Estates and Trusts Article, § 7–602(b) ("Upon the filing of a petition ... by ... the attorney, the [probate] court may allow a counsel fee to an attorney employed by the [estate] for legal services.").[8] This Court has considered, in a variety of pro-

---

8. In Maryland, attorneys seeking court approval to withdraw compensation from an estate must also "give written notice to each creditor

bate cases, whether an attorney's failure to comply with Section 7–602(b) was intentional and, therefore, worthy of disbarment. A review of the specific circumstances of these cases reveals the factors that should drive this Court's *scienter* conclusions in the context of probate misappropriation.

### 1. *Owrutsky*

In *Attorney Grievance Commission v. Owrutsky*, 322 Md. 334, 341, 587 A.2d 511, 514 (1991), an attorney took fees from two "estates before they were earned and before approval of the [probate] [c]ourt had been sought or obtained." We determined that his conduct came "perilously close to misappropriation of funds for which, in the absence of extenuating circumstances, disbarment is ordinarily the appropriate sanction." *Owrutsky*, 322 Md. at 355, 587 A.2d at 521. In divining an appropriate sanction, the Court distinguished *Attorney Grievance Commission v. Pattison*, 292 Md. 599, 441 A.2d 328 (1982), where an attorney, over the course of two and a half years, "took sums of money[, disguised as loans,] from an estate . . . for his own use on 30 occasions . . . ." *Owrutsky*, 322 Md. at 355, 587 A.2d at 521. Then, it held—again based on a totality of the circumstances, including the fact that the attorney "ha[d] been a member of the Bar for nearly [thirty] years without a record of previous misconduct"—that Owrutsky should be suspended with a right to reapply no sooner than three years. *Owrutsky*, 322 Md. at 355–56, 587 A.2d at 521.

### 2. *Kendrick*

In *Attorney Grievance Commission v. Kendrick*, 403 Md. 489, 508, 943 A.2d 1173, 1184 (2008), an attorney "accepted, prior to any court approval, $6,000.00 from the Estate for her services." After the Orphans' Court for Baltimore County learned of the misappropriation, it ordered the attorney to refund the fees, a command which the attorney ignored on

---

who has filed a claim [against the estate] . . . and to all interested persons. . . ." Md.Code (1974, 2001 Repl.Vol.), Estates and Trusts Article, § 7–502(a).

multiple occasions. *See Kendrick*, 403 Md. at 495–96, 943 A.2d at 1176. Despite the attorney's "inability to accept responsibility in the mishandling of the Estate," this Court concluded that the "misconduct was not due to greed or dishonesty, but rather ... to obstinateness and incompetence in probate matters." *See Kendrick*, 403 Md. at 522, 943 A.2d at 1192. Based on a totality of the circumstances, including the fact that the attorney "ha[d] not been previously sanctioned ... for professional misconduct," and "in light of our relevant prior cases," this Court imposed an indefinite suspension with a right to reapply contingent solely upon making restitution. *Kendrick*, 403 Md. at 522, 943 A.2d at 1192.

### 3. *Sullivan*

In *Attorney Grievance Commission v. Sullivan*, 369 Md. 650, 801 A.2d 1077 (2002), as in *Pattison*, the Court disbarred the offending attorney. Sullivan, an attorney appointed as an estate representative, failed to act initially to administer the estate. *See Sullivan*, 369 Md. at 653, 801 A.2d at 1079. Although the estate's heirs filed a petition to remove Sullivan, they agreed eventually to retain him and to offer $25,000.00 for the first accounting and $25,000.00 for the estate's closing. *See Sullivan*, 369 Md. at 654, 801 A.2d at 1079.

Notwithstanding this agreement, Sullivan still did not administer the estate, and the heirs petitioned the probate court for his removal again. *See id.* The parties reached another agreement, in which the attorney would resign immediately and waive most commissions and compensation. *See id.* The estate records revealed ultimately that Sullivan "had drawn twelve ... to fifteen ... checks, totaling $50,500.00, on the estate account, payable to himself." *Id.* When the heirs and Bar Counsel filed suit and initiated an investigation, respectively, the attorney remained unresponsive. *See Sullivan*, 369 Md. at 654–55, 801 A.2d at 1079. On this record, the Court concluded that the attorney's "actions were dishonest[,] ... constituted theft of estate funds," and imposed disbarment. *Sullivan*, 369 Md. at 656, 801 A.2d at 1080; *see also Attorney Grievance Comm'n v. Boehm*, 293 Md. 476, 446 A.2d 52 (1982)

(imposing disbarment where an attorney auctioned part of an estate, deposited the funds into an escrow account, made multiple withdrawals from that account, and was unable to recall how he used those funds).

### 4. *Whitehead*

Finally, in *Whitehead*, 390 Md. at 667, 890 A.2d at 753, an attorney withdrew "$40,200.00 for his services ... without prior court approval" while representing a D.C. estate. Appearing without counsel before the D.C. Court, the attorney was led allegedly to believe that his conduct would result automatically in disbarment, and so he consented to such action. *See Whitehead*, 390 Md. at 667–68, 890 A.2d at 754. Although Whitehead "ha[d] concentrated in estate and trusts law" throughout his three-decade legal career, *Whitehead*, 390 Md. at 667, 890 A.2d at 753, this Court concluded "[f]rom the record [that] it is not *apparent* ... [the attorney's] conduct was intentional." *Whitehead*, 390 Md. at 676, 890 A.2d at 759 (emphasis added).

The Court noted that the attorney "did not take the fees before they were improperly accounted for or earned," "returned the unapproved fees upon learning that taking them without approval was inappropriate," and had long-practiced in Maryland without incurring discipline. *See Whitehead*, 390 Md. at 676, 890 A.2d at 758–59. As such, the Court resolved that an indefinite suspension, with a right to reapply no sooner than eighteen months, was the appropriate sanction—"[i]t further[ed] our [disciplinary] goal ... by ensuring that every Maryland attorney is held to consistent standards of conduct." *Whitehead*, 390 Md. at 677, 890 A.2d at 759.

### B. Did Pleshaw Act Intentionally or "Otherwise Unintentionally"?

Pleshaw does not appear to have acted with the requisite "clear" and "apparent" intent required under Maryland cases. Rather, the facts of this case indicate that his intent was most directly "otherwise unintentional." In particular, unlike the attorney in *Owrutsky*, who took fees *before* they were earned

(and still suffered an indefinite suspension, but not disbarment), Pleshaw, before each withdrawal, appears to have earned the fees in question. Indeed, his first withdrawal, which was authorized, occurred on 7 May 1998. It was not until a year later, 17 May 1999, that Pleshaw made a second (albeit unauthorized) withdrawal. The probate court also approved, after-the-fact, this second withdrawal. Similarly, unlike the attorney in *Kendrick*, who refused to return the misappropriated funds or to accept responsibility for his misdeeds (but still received an indefinite suspension), Pleshaw returned the second fee even before the probate court referred the matter to local bar counsel and did not "dispute that he misappropriated funds. . . ." *In re Robert J. Pleshaw*, 2 A.3d at 172.

With respect to our cases involving misappropriation in probate matters where the resulting sanction was disbarment, Pleshaw's conduct stands in stark contrast. Far apart from the attorney in *Pattison*, who withdrew funds on thirty occasions from an estate and tried to conceal his actions, Pleshaw failed to seek authorization in only the one substantiated instance relied on by the D.C. Court. In addition, Pleshaw did not disguise his action, but rather notified the probate court in the First Accounting, filed two days after the second withdrawal.[9] In comparison to the disbarment case, *Sullivan*, in which an attorney abdicated entirely his obligation to administer an estate and withdrew $50,500.00 in twelve to fifteen checks, Pleshaw appeared to be performing diligently his duties, when he made a single unauthorized withdrawal for services rendered.

Most similar to *Pleshaw*'s facts is *Whitehead*, where an attorney, representing a D.C. estate, withdrew $40,200.00, without prior court approval. In imposing an indefinite suspension (with permission to apply for readmission no sooner

---

9. I do not weigh in my analysis the third withdrawal, as the D.C. Court did not because its probative value is limited severely by the confusing nature of the official notice paperwork Pleshaw received from the probate court.

than eighteen months), the Court emphasized the fact that Whitehead "did not take the fees before they were improperly accounted for or earned" and "returned the unapproved fees upon learning that taking them without approval was inappropriate." *Whitehead,* 390 Md. at 676, 890 A.2d at 758–59. Pleshaw earned the fee, reported its withdrawal, and returned the fees promptly. Taken together, *Whitehead* and the other cases described *supra* suggest that "it is not *apparent* that [Pleshaw's] conduct was intentional." *Whitehead,* 390 Md. at 676, 890 A.2d at 759 (emphasis added).[10]

### C. What is a Consistent and Appropriate Sanction?

Resolving that Pleshaw acted "otherwise unintentionally" under relevant Maryland caselaw, a consistent and, therefore, appropriate sanction would be an indefinite suspension (with permission to apply for readmission no sooner than eighteen months), akin to the one meted out to the attorney in *Whitehead.*[11] To impose anything more severe, *i.e.,* disbarment, is grossly inconsistent with prior probate-context misappropriation cases, where the attorneys behaved in more egregious fashions, but still received indefinite suspensions, with various conditions. These probate misconduct cases include not only *Owrutsky* and *Kendrick,* but also *Attorney Grievance Commission v. Thompson,* 376 Md. 500, 517–18, 830 A.2d 474, 484–85 (2003), where an attorney took a $16,000.00 commission out of an estate, without prior court approval, and deposited it into his personal account.

Among his multitude of violations, the attorney in *Thompson* "failed to file reports in a timely manner," distributed less

---

10. The D.C. Court also reported that Pleshaw "did not commingle the misappropriated funds with his own...." *In re Robert J. Pleshaw,* 2 A.3d at 174. This fact stands as further proof of otherwise unintentional conduct.

11. To be clear, the facts that Pleshaw earned the unauthorized fees, reported them to the probate court, returned them promptly, took responsibility for the misappropriation, and did not commingle funds are not mitigating factors. Rather, they are evidence essential to the initial inquiry whether Pleshaw acted intentionally.

than the heirs were entitled to, sued the heirs, and then kept the $16,000.00 commission that he had withdrawn without court approval, thereby "add[ing] insult to injury...." *Thompson,* 376 Md. at 512, 519, 830 A.2d at 481, 485. Nevertheless, we imposed an indefinite suspension on the bare mitigation evidence that the attorney otherwise had a clean disciplinary record and was cooperative with Bar Counsel. *See Thompson,* 376 Md. at 521–22, 830 A.2d at 487. To disbar Pleshaw is, at best, inconsistent.

## IV. What about *Cafferty?*

To assume that *Cafferty* stands for the proposition that Maryland treats a D.C. Court finding of "reckless misappropriation" automatically as "intentional misappropriation" in Maryland is tempting. For reasons I shall explain, however, *Cafferty* does not endorse such a conclusion.

### A. Factual and Procedural History of *Cafferty*

Diane E. Cafferty was admitted to the Bar in both Maryland and D.C. *See Cafferty,* 376 Md. at 701, 831 A.2d at 1043. In 1988, after a few years of practice, she and a colleague, Glenn Carlson, started their own law firm in D.C. *See Cafferty,* 376 Md. at 704–05, 831 A.2d at 1045. Trouble arouse when Carlson began raiding the trust account of a major client, a condominium association, to keep solvent the firm's operating account. *See Cafferty,* 376 Md. at 706, 831 A.2d at 1045. Eventually, Cafferty also engaged frequently in writing checks on the trust account and stonewalling the client when it demanded accountings. *See Cafferty,* 376 Md. at 713–14, 831 A.2d at 1050. Specifically,

> [B]ank records reveal that at least from late 1991, and continuing through mid–1996, Ms. Cafferty personally wrote numerous checks on the [client trust account, referred to as the Riggs Escrow Account,] that were made out to cash ... [to keep the firm's operating account solvent].

\* \* \*

[Ms.] Cafferty [also] signed many of the checks that were drawn on the Riggs Escrow Account that transferred these funds' to the [firm's operating account], despite the fact that she personally deposited some of the funds sent to the law firm by the . . . condominium client[ ] into the escrow account and thus knew that the Riggs Escrow Account contained client trust funds.

\*     \*     \*

Furthermore, Ms. Cafferty acknowledged that she even paid herself with funds from the Riggs Escrow Account. . . .

\*     \*     \*

Ms. Cafferty [also] failed to render accountings promptly to her condominium clients upon request. She attended meetings of the condominium association, including one in February 1994, and many of the written requests for accountings were addressed to her. Hence, Ms. Cafferty was aware of the requests for accountings, but made no effort to see that they were rendered in a timely fashion.

*Cafferty*, 376 Md. at 713–15, 831 A.2d at 1050–51 (internal quotation marks and citation omitted).

The D.C. Court found that although Cafferty may not have intended to treat the funds as her own, she certainly " 'engaged in a pattern of course or conduct demonstrating an unacceptable disregard for the welfare of entrusted funds.' " *Cafferty*, 376 Md. at 712, 831 A.2d at 1049 (citation omitted). As such, it held that she misappropriated recklessly, *i.e.*, with a "conscious indifference" to the security of the funds, and imposed disbarment. *See Cafferty*, 376 Md. at 711, 831 A.2d at 1049 (stating that the D.C. Court " 'adhere[s] to a standard of presumptive disbarment,' except in cases of negligent misappropriation or extraordinary circumstances") (citation omitted).

The Attorney Grievance Commission of Maryland sought reciprocal discipline, arguing that because of "[Cafferty's] disbarment . . . in [D.C.] for engaging in conduct involving misappropriation and failure to render accountings promptly to clients upon request, [Cafferty] should be disbarred also in

Maryland." *Cafferty*, 376 Md. at 701, 831 A.2d at 1043. Ultimately, this Court imposed disbarment as reciprocal discipline. The exact reasons for doing so require closer scrutiny.

B.  The *Cafferty* Holding

To conclude that D.C.'s reckless misappropriation is Maryland's intentional misappropriation (as advanced by Bar Counsel in its response to the Show Cause Order), one must rely (almost singularly) on plucking from its moorings *Cafferty*'s fleeting statement that "[Cafferty's] 'conscious indifference' in the use and management of the client trust account constitute[d] intentional misappropriation under Maryland law." *Cafferty*, 376 Md. at 725, 831 A.2d at 1057. In isolation, this remark (specifically, its invocation of the D.C. Court's phrase "conscious indifference") suggests that (1) Cafferty's behavior constituted "conscious indifference" and that (2) such "conscious indifference," whenever it occurs, constitutes "intentional misappropriation" under Maryland law.

Such a reading, however, manipulates the Court's express holding that the facts of that *particular* case constituted "intentional misappropriation" under Maryland caselaw. When viewed in proper context, the Court used the phrase "conscious indifference" clearly as a synonym for "behavior." The Court's remark, therefore, simply does not hold any groundbreaking or transformative influence.

Recognizing that, as a longstanding and invaluable principle, it should impose "consistent dispositions for similar misconduct," the *Cafferty* Court began its analysis. *Cafferty*, 376 Md. at 727, 831 A.2d at 1058. Initially, it recited the facts, as found by the D.C. Court. *See Cafferty*, 376 Md. at 704–15, 831 A.2d at 1045–52. It then analogized the facts to factually-similar Maryland cases. *See Cafferty*, 376 Md. at 718, 831 A.2d at 1053 ("We conclude that Ms. Cafferty's conduct, as found by the [D.C. Court], is more analogous to that found in *Vanderlinde* . . . and *Attorney Grievance Comm'n v. Gallagher*, 371 Md. 673, 810 A.2d 996 (2002). . . ."). Finally, the Court imposed disbarment because "[i]n similar situations, we

have [likewise] disbarred ... attorneys who have committed such misconduct." *Cafferty*, 376 Md. at 728, 831 A.2d at 1059.

In doing so, the Court observed that the D.C. Court deemed Cafferty's behavior "reckless" under D.C. caselaw.[12] *Cafferty*, 376 Md. at 713, 831 A.2d at 1050 (citation omitted). Aside from noticing that Maryland does not recognize "reckless misappropriation," the Court "*decline*[*d*] to compare [D.C.'s] three categories of misappropriation to the two categories in [Maryland's] analytical framework...." *Cafferty*, 376 Md. at 724, 831 A.2d at 1057 (emphasis added). Instead, the Court "appl[ied] *our* analytical framework to the factual findings of the [D.C. Court]." *Id.* (emphasis added); *see also id.* ("Taken as a whole, the Maryland cases discussed above[, including *Vanderlinde* and *Gallagher*,] provide us with an analytical framework we shall employ to classify [Cafferty's] behavior for purposes of reciprocal discipline."). We concluded ultimately that "[Cafferty's] 'conscious indifference' in the use and management of the client trust account constitutes intentional misappropriation under Maryland law." *Cafferty*, 376 Md. at 725, 831 A.2d at 1057. In the very next sentence, the Court stated that "[Cafferty's] acts of misappropriation *fall into* what our cases have determined to be '*intentional*' behavior sanctionable by disbarment." *Id.* (emphasis added).

The *Cafferty* Court was not holding simply that whatever conduct the D.C. Court deems "reckless" *ipso facto* becomes "intentional" in Maryland. Rather, we determined that the conduct in *Cafferty*—which happened to be deemed "reckless" in D.C.—looked like conduct in other Maryland cases, ultimately adjudged to be "intentional." It "fall[s] into" (as opposed to "is equated with") the intentional misappropriation category. *Cafferty*, 376 Md. at 725, 831 A.2d at 1057; *see Cafferty*, 376 Md. at 726, 831 A.2d at 1058 (holding that like the attorney in *Gallagher*, who "was disbarred for his unmiti-

12. We acknowledged that the D.C. Court considered the issue of "whether Ms. Cafferty recklessly misappropriated client funds" to be a "legal question which it reviewed *de novo*." *Cafferty*, 376 Md. at 710, 831 A.2d at 1048–49.

gated and *intentional* misappropriation of client funds," "[l]ikewise, Ms. Cafferty *intentionally* and consistently depleted the funds in the Riggs Escrow Account without the permission of the condominium owners") (emphasis added).[13]

## V. The Importance of Fidelity to the Principle of Consistency

By imposing mechanical disbarment in Pleshaw's case, the Majority forsakes the Court's independent analytical duty. To disbar Pleshaw, the Majority must have concluded that his "clear" and "apparent" intent, under Maryland law, was to defraud the estate. *Cafferty*, 376 Md. at 725, 831 A.2d at 1057 (citation omitted). *Cafferty*, however, offers no support for that result. The other comparable cases point in another direction as well.

In sum, a Maryland attorney should not be punished more harshly than other Maryland attorneys, who have behaved similarly, merely because he or she was first adjudicated to have acted "recklessly" in a D.C. bar disciplinary action. The proper Maryland reciprocal sanction in Pleshaw's case is indefinite suspension, with the right to apply for readmission no sooner than eighteen months.

Judge MURPHY authorizes me to state that he joins in the views expressed in this Dissent.

---

13. Negating the view that the Court was "compar[ing] [D.C.'s] three categories," *Cafferty*, 376 Md. at 725, 831 A.2d at 1057, and was not conducting its own independent analysis, the Court stated definitively that "under *our own* caselaw, ... [Cafferty] *intentionally* misappropriated client funds in violation of [the Maryland Rules]." *Cafferty*, 376 Md. at 726–27, 831 A.2d at 1058 (emphasis added). To craft an appropriate sanction, the Court did not cling reflexively to D.C.'s sanction, but analogized the facts to "similar situations, [in which] we have disbarred [the] attorneys." *Cafferty*, 376 Md. at 728–29, 831 A.2d at 1059 (comparing the present case to two Maryland cases, *Attorney Grievance Commission v. Bernstein*, 363 Md. 208, 768 A.2d 607 (2001) and *Vanderlinde*, where the attorneys misappropriated "willfully" and "intentional[ly]," respectively).